This is an appeal from a summary judgment for the defendant bank in an action filed by the plaintiff pro se. Anna Belle Newman sought damages from the First National Bank of Mobile (FNB) for fraud, conversion, and failure to give her credit for a payment she made on a loan.
This action arises from a business venture originated by Newman and Ralph E. Whitson. Newman and Whitson formed a partnership and later a corporation, Wanco, Inc., to develop townhouses on certain real property in Mobile. Newman was president of Wanco, owning 490 shares. Whitson was vice president, owning 500 shares. Newman's daughter owned the remaining 10 shares of the corporation.
The primary financing of the development was with a savings and loan institution, but on May 27, 1980, Wanco took a $57,000 loan from FNB, with the proceeds being used primarily to pay interest on the loan from the savings and loan institution. Newman refers to the 90-day promissory note executed in connection with the May 27 loan as a corporate note executed by Wanco, but we observe that Newman and Whitson signed without reference to any capacity as officers of the corporation. In any event, they were both personally liable as guarantors on the note.
Newman and Whitson renewed the $57,000 obligation on August 26, 1980, and again on December 22, 1980, at which time they increased the principal indebtedness to $75,000. The notes evidencing these renewals were executed in the same manner and with the same personal guaranties as the May 27 note.
On March 23, 1981, Newman and Whitson again renewed their obligation to FNB. Newman states that at this renewal the note was changed to a personal note executed by Newman and Whitson. This and subsequent renewals dated June 23, 1981, and September 22, 1981, do omit the words "Wanco, Inc.," which appeared above the debtors' signatures on the previous notes, and reflect that they are secured by two mortgages, one from Whitson and his wife on property in Baldwin County, and another from Newman on property in Mobile.
Disputes between Whitson and Newman resulted in late payments of interest on the note renewal of September 22, 1981, and the default of the note on December 21, 1981. On August 17, 1982, FNB assigned the note and the mortgage on Newman's residence to Whitson in exchange for approximately $12,000 cash and a note for $64,206. 19 from Whitson. *Page 108 
On October 15, 1982, Whitson sued Wanco and Newman on several grounds, including her obligation to pay half of the indebtedness on the note that had been assigned to Whitson. Newman counterclaimed against Whitson on various theories, including breach of contract. When Newman filed this action on August 29, 1983, she included a claim against Whitson. The trial court, however, severed that claim and ordered it consolidated with the counterclaim in Whitson's action.
Newman's complaint alleges that the change in form of the note from a corporate to a personal note and the execution of the mortgage on her residence were the result of collusive fraud between Whitson and Benjamin Franklin King III, a vice president of FNB who managed the Wanco transactions. Newman argues that FNB is liable for the fraudulent conduct of Whitson because Whitson was a director emeritus on the board of FNB. Whitson took the actions of which Newman complains, however, in his capacities as stockholder and officer of Wanco and as obligor on the note. Any liability of FNB, therefore, must be premised on actions taken by King.
After discovery, FNB moved for summary judgment. Newman filed two motions in opposition to the motion for summary judgment. Her second motion, filed on March 25, 1985, included her affidavit. Newman says that, at a hearing on March 15, the trial judge indicated he would grant summary judgment. She argues that she intended to put on sworn testimony in opposition to the motion, but was not allowed to do so, and that her request for a court reporter was not granted. She claims that she was denied due process of law by virtue of the court's decision to grant summary judgment without allowing her sufficient opportunity to oppose the motion.
The record discloses, however, that Newman had ample opportunity to oppose FNB's motion for summary judgment. She filed her initial motion in opposition on November 9, 1984, reciting that her complaint was supported "by the pleadings, evidence, the deposition of Mr. B.F. King III, and documents of public record." Newman's deposition was a part of the record before the trial court, having been attached to FNB's motion for summary judgment.
Furthermore, the record reflects that the trial court granted the motion for summary judgment and denied Newman's March 25 "Renewed motion for court to deny summary judgment" on May 3, 1985. Thus, the court had Newman's affidavit before it when it entered a final summary judgment. Newman filed a Rule 59, A.R.Civ.P., motion to alter, amend, or vacate the summary judgment, along with a supporting affidavit, on May 8, 1985. The trial court took this motion under submission on May 24 and denied it on May 31. On this record, no question of due process is presented. Newman presented her argument and testimony in opposition to the motion for summary judgment in full detail. The only question presented is whether the trial court erred in ruling that FNB was entitled to summary judgment.
Upon the filing of a motion for summary judgment and any timely response thereto,
 "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
Rule 56 (c), Alabama Rules of Civil Procedure.
Count two of Newman's complaint reads:
 "[FNB] failed to give the Plaintiff credit for her payment on the interest in the amount of $1916.61 made on December 4, 1981 as evidenced by the bank's transaction history, a copy of which is attached hereto marked as Exhibit `E' and made a part hereof as if fully set out herein. A copy of Plaintiff's cancelled check is attached hereto marked as Exhibit `F' and made a part hereof as if fully set out herein. *Page 109 
 "WHEREFORE, Plaintiff demands judgment against [FNB] in the sum of $1,916.61."
King's affidavit included exhibits showing the transaction history of the loan. He stated that Newman's December 4 payment was posted to the "Commercial Loans Posting Journal" on that date, but that "Due to mechanical error the December 4, 1981, payment . . . was not transferred to the `Commercial Loans History Card,' as was the case with a number of other commercial loan payments processed on December 4, 1981." He explained that the bank relies upon the posting journal for calculating principal and interest charges and that Newman's payment was credited to the loan. He further explained that Newman's December 4 check deposited the correct amount to pay the remaining one-half of the interest that had come due on September 22, and that the loan balance statement showed that an appropriate reduction of interest was credited to the loan.
FNB sets forth these facts in its brief by reference to King's affidavit. Newman does not controvert this evidence in her reply brief. Her complaint attaches the "Commercial Loans History Card" in support of this count. King's affidavit was sufficient to dispel any issue as to the fact that FNB did credit Newman's December 4 payment to the loan. The trial court did not err in granting summary judgment on this count.
Newman's counts one and three recite facts concerning the loan renewals, the mortgages, and the assignment of the note and mortgage to Whitson. Both counts allege fraud, misrepresentation, and conversion. Count one alleges that King requested a mortgage from Newman in June 1981, representing that Whitson had already given him a mortgage. It recites that neither King nor Whitson had produced a copy of the mortgage even though Newman had requested one. The implication, not clearly stated in the complaint, is that King fraudulently induced Newman to execute the mortgage by falsely stating that Whitson had executed a similar mortgage.
Count three alleges that the assignment of the note and the mortgage on Newman's residence was made to Whitson for no consideration except a renewal of the note in Whitson's name for a reduced amount and without collateral. Newman alleges that this transaction was the result of a collusive agreement between Whitson and King.
Newman's complaint is a commendable attempt by a pro se plaintiff to plead a case. Nevertheless, it fails to allege that she was damaged by the allegedly fraudulent activity of King and Whitson. Prior to the execution of the mortgage or the assignment of the note and mortgage, she was personally liable for the full $75,000 of the note plus interest. After the assignment of the note to Whitson, she would presumably be entitled to an offset of half of the amount under her agreement with Whitson. This issue of contribution properly relates to the suit filed against her by Whitson and her counterclaim therein. Indeed, Whitson only sued her for $37,500 on the note.
When pressed on the issue of damages in her deposition, she responded that the series of events that led to the mortgage on her home coming into Whitson's possession placed him in a better position against her than he would have been in without the allegedly fraudulent inducement to execute the mortgage. FNB argues in its brief that Newman has not been damaged by the mortgage because it was not recorded, but Newman responds that Whitson's possession of the note and the mortgage gives him rights that he otherwise would not have against her. Newman claims that, as soon as she executed the mortgage on her house, Whitson notified her that he would no longer pay any interest on the FNB loan or otherwise contribute to the Wanco venture. This, again, is a claim that properly relates to her counterclaim against Whitson. Even so, we do not find it necessary to affirm the summary judgment in favor of FNB solely on the ground that Newman has not shown that she has suffered any *Page 110 
damages from any actions of FNB's vice president, King.
The only allegedly false statements that King made in asking Newman to give FNB a mortgage on her home were that Whitson had given such a mortgage on his home in Baldwin County and that King needed the mortgage only as a formality to show the bank's board of directors that the loan was secure. The latter contention is easily answered. Newman knew she was executing a mortgage on her property and could not reasonably rely on a representation, much less an implication, that FNB would not foreclose on the mortgage if the note went into default. In order to recover for fraud, a plaintiff's reliance on false statements must be reasonable. Code 1975, §§ 6-5-100, -101, -104; First National Bank of Mobile v. Horner, 494 So.2d 419
(Ala. 1986); American Pioneer Life Ins. Co. v. Sherrard,477 So.2d 287 (Ala. 1985); Rich Crest Homes, Inc. v. Vaughn Place,Inc., 485 So.2d 1123 (Ala. 1986); Torres v. State Farm Fire Cas. Co., 438 So.2d 757 (Ala. 1983).
The other allegation of a misrepresentation, the allegation that King falsely told Newman that Whitson had previously executed a mortgage, rests upon a number of assertions that are not supported in the record. During discovery, Whitson produced the mortgage he and his wife executed on their Baldwin County property. The instrument is dated December 22, 1980. Newman argues that the instrument was not executed until after she filed her complaint and that it was back dated. She asserts that King stated in his deposition that the December 1980 note was unsecured. The deposition shows that he stated only that no security is listed on the December 1980 note, and that, among the exhibits before him (which did not include the March 1981 note or the Whitsons' mortgage), the first record he had of asking for security was June 4, 1981. Furthermore, King appears to have been stating that June 4, 1981, was when he first askedNewman for security. None of this refutes the indications on the March 1981 note, the December 1980 mortgage, or the June 1981 letter that the Whitsons executed a second mortgage to secure the Wanco indebtedness before Newman did.
Newman further states that the June 4, 1981, letter to her from King implies that Whitson had given a mortgage immediately prior thereto and that the inconsistency between this version and the assertion now made that King gave the mortgage in December 1980 indicates that no mortgage had in fact been made in December 1980. The letter says "Ralph has previously given the Bank a second lien on his Point Clear property." "Previously" indicates the slightly more distant past than if the letter had said Whitson had "recently" or "just" given a mortgage, so the letter is in fact more consistent with the December 1980 mortgage than with Newman's version.
Newman argues that Whitson's and FNB's failure to produce the December 1980 mortgage until she obtained a court order for production indicates that it was fabricated during the discovery process. This is sheer innuendo and cannot suffice to contradict the written instrument and create a factual issue.
Finally, Newman asserts that the recitation in the March 23, 1981, renewal note that it is secured by a mortgage on property in Baldwin County was not on the note when she signed it and argues that it was added later in different type. Even if it is true that this reference was added after she signed the note, such action would not amount to actionable fraud. As noted above, Newman did not offer any competent evidence tending to disprove the recitation on the Whitsons' mortgage that it was executed on December 22, 1980. Newman does not argue that any failure to inform her of the mortgage in March 1981 was fraud, but only that the statement in June 1981 that the mortgage existed was false.
Newman's claim for conversion does not merit discussion, because there was no evidence whatsoever that FNB exerted *Page 111 
wrongful control over any property belonging to Newman. She argues that the assignment of her mortgage to Whitson was a wrongful use of the property, but the record shows that Whitson paid fair consideration for the note and mortgage.
For the foregoing reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.