The central question presented by this appeal is whether summary judgment was *Page 795 
appropriate. In determining that question, we must apply the "substantial evidence" rule. Ala. Code 1975 § 12-21-12.
The dispute involved is whether SouthTrust Bank, which had made a business loan to the debtor and other partners, properly took money from a deposit made by the debtor and applied it to pay the balance due on the note. Two basic questions are presented:
 1) Did the debtor present substantial evidence to show that the bank was equitably estopped to make the set off?
 2) Was the deposit of the debtor a "special" deposit and, therefore, not subject to set off?
 FACTS
Plaintiff-appellant, Robert O. Bass, filed a complaint against SouthTrust Bank in which he claimed that the bank's taking of over $100,000 out of his checking account and applying it to a note he had executed was illegal. In separate counts, he claimed that the bank was equitably estopped; was guilty of fraud, breach of fiduciary duty, conversion, and breach of a covenant of good faith; and that the bank violated his constitutional rights of due process by failing to give advance notice that it was making the set off.
The bank answered the complaint and filed a motion for summary judgment, supported by evidence it claimed showed that it was entitled to a judgment as a matter of law. There is no substantial dispute between the parties on the basic facts; the main question is whether, as already stated, the doctrine of equitable estoppel should apply, and whether the deposit made by the debtor was a "special" deposit.
On October 15, 1982, Bass and several other persons borrowed $200,000 from SouthTrust to finance a restaurant in Mobile called Bob's Sea Ranch. The restaurant failed and, from time to time, SouthTrust agreed to refinance the balance of the loan. The outstanding indebtedness was reduced to the point that on October 29, 1985, the principal balance was $108,621.95, when Bass, Bobby J. Gilbert, and Billy G. Nippert executed the note that is the subject of this controversy. The bank, at that time, had in its files continuing personal guaranties of Virgil E. Morris, Gene Mills, and Louis Griffith. The aforenamed individuals and one or two others are or were members of a partnership behind the restaurant venture. The terms of the note evidencing the contract between Bass and the other two makers and SouthTrust show that the makers were jointly and severally liable.
Paragraph 2.B. of the note states:
 "You promise to pay to us or our order the principal sum of One Hundred Eight Thousand Six Hundred Twenty-One 95/100 — Dollars ($108,621.95) together with interest on the unpaid balance of said sum at the rate of 11.49% per annum until maturity. You agree to pay said sum, the interest thereon, and credit life insurance premiums, if any, in 11 monthly payments of $2,230.18 each and 1 final payment of the unpaid balance of the principal sum, all accrued but unpaid interest thereon, and all other sums, if any, then due under this Note. The first payment is due on December 15, 1985, and another payment is due on the same day of each month thereafter under November 15, 1986, at which time the final payment will be due. We will apply your payments first to accrued interest, . . . and then to the principal sum." (Emphasis indicates typed matter; remainder in printed form.)
Payments were received by the bank as follows:
 10/29/85 — Note executed — $108,621.95 11/27/85 — $890.91 received
12/15/85 — FIRST INSTALLMENT DUE
 12/17/85 — $1,339.27 received (+ $890.91 = receipt of First installment)
1/15/86 — SECOND INSTALLMENT DUE
1/16/86 — $2,230.18 received (= Second installment)
1/24/86 — $380.91 received
2/15/86 — THIRD INSTALLMENT DUE *Page 796 
 2/20/86 — $1,849.27 received (+ $380.91 = Third installment)
3/4/86 — $380.91 received
3/15/86 — FOURTH INSTALLMENT DUE
4/4/86 — $1,305.47 received
4/15/86 — FIFTH INSTALLMENT DUE
 5/1/86 — $543.72 received (+ $380.91 + $1,305.47 = Fourth installment)
5/15/86 — SIXTH INSTALLMENT DUE
5/16/86 — $761.82 received
5/20/86 — $1,090.91 received
 5/29/86 — $543.72 received (+ $761.82 + $1,090.91 = Fifth installment and $166.19 toward Sixth
installment)
6/15/86 — SEVENTH INSTALLMENT DUE
6/26/86 — $1,090.91 received
 7/2/86 — $973.00 received (+ $166.19 + $1,090.91 = Sixth installment)
7/15/86 — EIGHTH INSTALLMENT DUE
8/15/86 — NINTH INSTALLMENT DUE
 9/5/86 — $4,095.35 received (= Seventh installment and $1,865.09 toward Eighth installment)
9/15/86 — TENTH INSTALLMENT DUE
10/15/86 — ELEVENTH INSTALLMENT DUE
11/15/86 — TWELFTH (BALLOON) PAYMENT DUE
12/24/86 — Loan charged off by bank
 1/2/87 — $2,595.19 received (+ $1,865.09 = Eighth and Ninth installments)
1/8/87 — Account set off
After the loan was charged off on the bank's books on December 24, 1986, the bank received two checks from persons other than Bass that would have equalled the balance of the eighth, and all of the ninth installments, if additional interest resulting from late payments was ignored. The bank argues that if one calculates the additional interest that accrued during the times when payments were substantially late, the per diem amount generally being around $32.00, and with payments being applied first to interest as specified in paragraph 2.B of the note, the total amount received prior to the charge-off was the amount necessary to cover only the first six installments and part of the seventh. There is no evidence that there was any effort made by Bass or any of the other obligors to have the balance of the note renewed.
Bass does not dispute the basic facts, but in an affidavit filed in opposition to the bank's motion for summary judgment, stated inter alia:
 "Pursuant to this course of dealings by the defendant, SouthTrust Bank, the defendant as late as the latt er part of December, 1986, accepted a payment of interest on the indebtedness due from the co-maker, namely Bobby J. Gilbert and represented through its officers and agents that the defendant, SouthTrust Bank, would work with myself and the other [sic] with whom they had been working for the past four years, all of whom comprise the initial partnership in continuing to reduce the principal and interest owed. These facts were made known to myself and based on these facts I believed and relied on the fact that the obligation was being serviced and that the defendant, SouthTrust Bank, would continue to work with myself and other [sic] in causing the reduction of the principal and interest owed."
When Bass, on January 5, 1987, made a $206,057.16 deposit to his personal account at SouthTrust, the deposit was noted on a computer printout, and a bank official noted it and determined that the deposit was made by Bass and that the bank had just previously charged off a loan made to him.
After discovering that the depositor and the obligor were one and the same, the bank made a decision to set off the Bass account for the balance of principal and *Page 797 
interest due on the note, to-wit: $102,841.14. Bass was then notified by mail.
The note contained these provisions:
 "6. Set-Off; Waiver of Exemptions. You hereby agree that if you are in default under this Note, we may set-off your indebtedness under this Note against any account which you have with us at that time . . . .
"* * * *
 "9. Waiver of Demand and Presentment. You agree that you will do everything you have agreed to do under this Note without requiring that we ask you to do it and without requiring that we first present this Note to you.
"* * * *
 "14. Our Rights are Cumulative;Waivers; Extensions. You agree that our rights under this Note, under any other agreements we may have with you, and under applicable law are cumulative, and that we will not by any act, delay, omission, or otherwise be deemed to have waived any of our rights or remedies under this Note or under any other agreement or under applicable law unless the waiver is in writing and signed by us. We may accept late payments and partial payments and may delay in enforcing our rights without losing any of our rights. We may take any additional collateral for or release any collateral for or fail to perfect our security interest in any collateral for this Note, and we may grant extensions, renewals or indulgences to you or to any other party obligated to pay this Note, all without releasing or in any way affecting your obligation on this Note." (Emphasis added except as to headings).
 SUMMARY OF ARGUMENT
The bank summarizes its argument as follows:
 "This is a summary judgment case decided under the new 'substantial evidence rule,' although the result would be the same under the 'scintilla rule' because there is not even a scintilla of evidence favoring Bass' position. Bass' affidavit is vague and ambiguous, and as such does not set forth 'specific facts' as required by Rule 56(e) of the Alabama Rules of Civil Procedure. There is no basis for estoppel to be applied against SouthTrust, especially because of the existence of paragraph 14 of the Note, which says that no waiver is effective unless it is in writing. Bass has stated no facts which would support his claim that his deposit was 'special' so as to preclude set-off. Even if it might otherwise be deemed to have been 'special,' SouthTrust cannot be deemed to have had notice of same. The mere size of the deposit, standing alone, is not notice that it might be 'special.' There is no evidence that the relationship between SouthTrust and Bass was anything other than a normal banking, i.e., creditor-debtor, relationship. The indebtedness was due on November 15, 1986, and unpaid until the set-off on January 8, 1987, so it had clearly 'matured.'
 "Bass' conversion argument is nothing more than an extension of his estoppel and fiduciary duty contentions.
 "The bank also argues that 'from an objective point of view, this case and the appeal were filed "without substantial justification" within the meaning of the Alabama Litigation Accountability Act because it is groundless in law and in fact,' and that '[e]ither of those grounds standing alone is sufficient to warrant the award of attorney's fees in this case.' "
We agree with the bank's argument, except that we fail to find that the suit or the appeal was frivolous.
 I
We first address the burden of proof on the party opposing summary judgment when the movant has sustained the burden of making a prima facie showing, by admissible evidence, that there is no genuine issue of material fact.
The "scintilla rule" was abolished on June 11, 1987, by section 2 of Act No. 87-184 of the Alabama Legislature [Ala. Code 1975, § 12-21-12 (1987 Supp.)], which was prior to the filing of this action *Page 798 
by Bass. That same act made "proof by substantial evidence" the test when passing upon a motion for summary judgment. When the scintilla rule was in effect, it meant that when a party moving for summary judgment made a prima facie showing, on the basis of affidavits and other matters enumerated in Rule 56, Ala.R.Civ.P., that there was no genuine issue of material fact, then the burden shifted to the non-moving party to show that there was at least a scintilla of evidence in his favor.Hutchins v. State Farm Mut. Auto. Ins. Co., 436 So.2d 819, 825
(Ala. 1983). The Act abolishing the scintilla rule does nothing to change the procedure for handling the burden of proof, so if the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden still shifts to the non-movant; however, the burden is now greater than in the past, because the non-movant must show "substantial evidence" in support of his position.
 II
Based on the principles of law now applicable, we find that the affidavit presented in opposition to the motion for summary judgment failed to comply with the requirements of Rule 56(e), but assuming, arguendo, that it did meet Rule 56 requirements, we find that the affidavit failed to show that there was a triable issue of equitable estoppel, under the facts and circumstances of this case, and that the debtor failed to show that there was a triable issue on whether the bank knew or should have known that the deposit made by the debtor was a "special" deposit.
 III
On the issue of equitable estoppel, Bass stated the following in his affidavit:
 "Pursuant to this course of dealings by the defendant, SouthTrust Bank, the defendant as late as the latter part of December, 1986, accepted a payment of interest on the indebtedness due from the co-maker, namely Bobby J. Gilbert and represented through its officers and agents that the defendant, SouthTrust Bank, would work with myself and the other [sic] with whom they had been working for the past four years, all of whom comprise the initial partnership in continuing to reduce the principal and interest owed. These facts were made known to myself and based on these facts I believed and relied on the fact that the obligation was being serviced and that the defendant, SouthTrust Bank, would continue to work with myself and other [sic] in causing the reduction of the principal and interest owed."
Rule 56(e), Ala.R.Civ.P., in pertinent part, provides:
 "When a motion for summary judgment is made, and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is no genuine issue for trial." (Emphasis added.)
In Sartino v. First Alabama Bank of Birmingham, 435 So.2d 39,41 (Ala. 1983), this Court held that the affidavits of Sartino did not meet the requirements of Rule 56(e) because "all of them amount[ed] to vague and general assertions, such as 'it was never intended to be a personal obligation.' " Accord,Williams v. Bank of Oxford, 523 So.2d 367, 370-71 (Ala. 1988).
This should be especially true in this case, because the purpose of the statements in the complaint and in the affidavit is to show that the Bank was estopped to set off the account. Under Rule 8(c), Ala.R.Civ.P., the defense of estoppel must be "set forth affirmatively." This means that the facts constituting estoppel "must be set forth with particularity."Ex parte Luverne Geriatric Center, Inc., 480 So.2d 562, 568
(Ala. 1985). "[E]very material fact which the pleader expects to prove" must be alleged. Industrial Savings Bank v.Greenwald, 229 Ala. 529, 535, 158 So. 734 (1935); quoted inKimbrell v. City of Bessemer, 380 So.2d 838, 839 (Ala. 1980). We hold that an affidavit attempting to show substantial evidence of estoppel in opposition to a summary judgment motion must *Page 799 
be at least as particular and specific as a defensive pleading of estoppel.
Bass's assertion is little more than a verification of his pleadings. Paragraph 6 of the complaint is almost identical with Bass's affidavit statement.
Paragraph 6 reads as follows, to-wit:
 "6. That, pursuant to this course of dealings by the defendant, the defendant as late as the latter part of December, 1986, accepted a payment of interest on the indebtedness due from a co-maker; namely, Bobby J. Gilbert, and represented through its officers and agents that the defendant would work with the plaintiff and others comprising the initial partnership as it had done over the past few years in continuing to reduce the principal and interest owed, all of which was made known to the plaintiff so that the plaintiff was apprised, based on representations by the defendant, that the obligation on which the plaintiff was a maker was being serviced and that the defendant would continue to work with the plaintiff in causing the reduction of principal and interest owed."
The law states that "[e]vidence offered in response to the motion [for summary judgment], in the form of affidavits or otherwise, must be more than a mere verification of the allegations contained in the pleadings, Morris v. Morris,366 So.2d 676, 678 (Ala. 1978); and must present facts which would be admissible in evidence." Whatley v. Cardinal Pest Control,388 So.2d 529, 532 (Ala. 1980). Because Bass's affidavit is a substantial restatement of paragraph 6, it "amounted to no more than verification of facts alleged in the complaint." It standing alone, did not contradict the movant's evidence. 388 So.2d at 532.
Assuming, arguendo, that the statement in Bass's affidavit regarding the alleged representations made in December 1986 would be sufficient to show the elements of estoppel under the case of Bank of Huntsville v. Witcher, 336 So.2d 1384
(Ala.Civ.App. 1976), which is heavily relied upon by Bass, it isnot effective to protect Bass in this case, because paragraph 14 of the note requires such a statement to be in writing. It says "[W]e will not by any act, delay, omission, or otherwise be deemed to have waived any of our rights or remedies under this note . . . unless the waiver is in writing and signed byus." Such a provision is effective according to its terms. Halev. Ford Motor Credit Co., 374 So.2d 849 (Ala. 1979).
The facts of this case are much more favorable to SouthTrust than the facts favoring the creditor in Williams v. Ford MotorCredit Co., 435 So.2d 66 (Ala. 1983), in which a directed verdict was affirmed under the scintilla rule. In Williams, the plaintiff had made several late payments, which were accepted. The payment due February 7, 1977, was not sent until March 4, and it was made in the form of a money order which included the March 7 payment. On March 5, prior to actually receiving the payment, the creditor repossessed her car. By affidavit and deposition, Mrs. Williams stated that she telephoned the creditor on March 3 or 4, and was told that there would be no problem with her account if she sent in the two payments at that time. The trial court granted a motion in limine and then sustained an objection to Mrs. Williams's attempt to testify to this. Id., at 67. The security agreement provided that the waiver of any default would not be deemed a waiver of any other default, and that all modifications of the security agreement must be in writing. Id., at 68. This Court said:
 "Assuming, arguendo, that Mrs. Williams' telephone conversation on March 3 or 4, 1977, was admissible to show that the contract between the Williamses and FMCC had been modified to extend the time for payment, that testimony would not change the outcome of this case since the security agreement expressly provided that any modification of its terms must be in writing. Likewise, the acceptance of the late payment could not, without a writing evidencing the modification, operate as a waiver of default."
Id., at 68.
Accord, Johnson v. Central Bank of the South, 514 So.2d 969
(Ala. 1987); McAllister *Page 800 v. Langford Investigators, Inc., 380 So.2d 299 (Ala.Civ.App. 1980). Although this Court pointed out in Auto-Plaza, Inc. v.Central Bank of Alabama, N.A., 394 So.2d 6 (Ala. 1980), that the mere inclusion of a nonwaiver of acceleration clause does not, under all circumstances, preclude the operative effect of the doctrine of equitable estoppel, it should be noted that the agreement in Auto-Plaza did not require that any contract modifications be in writing. We find the circumstances of this case to be more analogous to those of the Williams case. In fact, we cannot distinguish the present case from the Williams
case.
There is still another reason why the estoppel doctrine is not applicable here. One of the requisite elements to support a claim of equitable estoppel is reliance. As a matter of law, Bass is unable to show substantial evidence that he reasonably relied on SouthTrust.
Bass says he relied on the Bank's repeated acceptance of late payments, especially the acceptance of the two checks totalling $2,595. 19 in late December 1986 or early January 1987 and the three November 18, 1986, letters from Janice Fitzgerald of SouthTrust to three guarantors of the note. He said that he showed his reliance by depositing more than $200,000 into his "personal account" at SouthTrust. We are unpersuaded.
The manner in which payments were received by SouthTrust has been set forth above. This is not in dispute. This listing shows that, as of November 18, 1986, the last time SouthTrust had received any payment was September 5, 1986. That payment was only enough to pay the seventh installment and part of the eighth, even though the tenth payment was due the 15th of September. On November 15, the final, balloon payment had become due. SouthTrust officer Janice Fitzgerald sent the three letters on November 18 to three guarantors to let them know that the note had been past due since July 15, 1986, and that 'the guarantors' combined total arrearage due was $5,462.43. No such letter was sent to Bass or the other makers. SouthTrust did not receive that much money from any of the parties obligated, either as makers or guarantors, prior to the set-off. Instead, a check from "B.J. Gilbert," in the amount of $465.19 and a Marion Corporation check in the amount of $2,130 payable to "Louis E. Griffith," which had been endorsed over to SouthTrust, were received by the Bank on January 2, 1987. These added up to $2,595.19, and, together with all prior payments, equalled the total due for the first nine payments, less additionally accrued interest.[1] Thus, even if compliance with the November 18 letters of Janice Fitzgerald to the guarantors would have been sufficient to protect Bass, it is undisputed that the demands of these letters were not met.
Bass's claim of reliance in making the deposit is unfounded as a matter of law. Even if it is assumed, because this was a summary judgment proceeding, that there actually was reliance, it must be deemed unreasonable, as a matter of law, for Bass to rely on SouthTrust's purported willingness to work with him and the other debtors under all the facts and circumstances of this case. This Court has consistently affirmed summary judgments and judgments based on directed verdicts in fraud and estoppel cases where the reliance was deemed unreasonable as a matter of law.[2]
Also, to allow oral representations to vary the terms of the written instrument *Page 801 
under these circumstances would violate the parol evidence rule.
In Bengston v. SouthTrust Bank of Baldwin County,500 So.2d 1111 (Ala.Civ.App. 1986), the borrower defended against the Bank's collection efforts by:
 " alleging a course of dealing with plaintiff over a period of years which ripened into a contract.
Such custom or course of dealing was without question different in terms and conditions from those expressed in the notes. Defendant charged that such contract was so contrary to the terms of the notes that plaintiff's suit for collection of the notes amounted to a breach of contract. In other words, defendant says-yes, I executed the notes and by their terms they are due and payable, but by an oral agreement made before or at the time of their execution there were different terms and conditions."
500 So.2d at 1112. (Emphasis added.)
On the basis of the parol evidence rule, the trial court inBengston granted summary judgment and the Court of Civil Appeals affirmed.
If we accepted the Bass affidavit, we would have to disregard paragraphs 1 and 2.B of the note, by which Bass and others jointly and severally promised to pay $108,621.95 plus interest in eleven monthly installments of $2,230.18 plus a twelfth payment of the balance on November 15, 1986. We would also have to disregard that part of paragraph 14 of the note that says the Bank "may accept late payments and partial payments . . . without losing any of [its] rights." This we refuse to do.
 IV
Bass next argues that SouthTrust was not entitled to set off the funds in his "personal account" on January 8, 1987, because the amount deposited was for a special purpose. The only purported statements of facts in his affidavit in opposition to the summary judgment motion in this regard are as follows:
 "[T]he monies had been placed in my personal account for the purpose of paying third parties in reference to a land transaction totally unrelated to the initial note to SouthTrust Bank of October 15, 1982 in the amount of $200,000.00 and the subsequent amendments thereto and reduction thereof. . . .
"* * * *
 ". . . I caused funds which were earmarked to be paid to third parties from a transaction totally unrelated to the initial note by and between myself and defendant, SouthTrust Bank, to be placed in a personal account at SouthTrust Bank of Baldwin County during the early part of January, 1987. These funds were generated to me resulting from a business transaction totally unrelated to the obligation to SouthTrust Bank and these funds were pledged to third parties other than the defendant, SouthTrust Bank, so that my account was being used as a clearing house for funds owed to third parties."
Bass's argument is based on the exception to the rule allowing set-offs that, "where the customer has made the deposit for a special purpose, known to the bank, the bank may not set the deposit off against the loan." Rainsville Bank v.Willingham, 485 So.2d 319, 323 (Ala. 1986). (Emphasis added.)
Assuming, arguendo, that the affidavit states "specific facts," summary judgment was still appropriate. Even if there was a special purpose for the funds, there is no indication that SouthTrust knew or should have known of it. There is not even a general statement of fact by Bass in his affidavit that could conceivably indicate that the Bank had any such notice or knowledge.
In his brief, Bass argues, as we understand his argument, that SouthTrust should be deemed to have had notice because of the size of the deposit. We disagree.
As stated in Kaufman v. First National Bank of Opp, Ala.,493 F.2d 1070, 1071 (5th Cir. 1974), "The right to make a set off requires determining the character of the deposit and the bank's knowledge or notice of its character." That court also said, "A *Page 802 
deposit is special rather than general when there is specific direction, or agreement express or implied, that it be special or where there are circumstances sufficient to create a trust by operation of law." Id., at 1072.
We have found no cases that provide that the mere size of the deposit, standing alone, is an indication that it has a special character. Bass's brief cites several cases in an effort to support his position, but we think they are not apposite. We summarize each of the cases cited by Bass.
In Rainsville Bank v. Willingham, 485 So.2d 319 (Ala. 1986), the plaintiff had informed the bank that he was going to receive an $11,500 insurance check as the result of his tractor and trailer having been stolen. He and the bank officer agreed that part of the check proceeds would be used to pay off the smaller loan he had with the bank, and the balance would remain in his account so he could "pay off . . . [his] small bills."Id., at 320. Despite this agreement, the bank set off the proceeds when they were deposited and applied them against the larger loan. A six-member majority of this Court held that the deposit was received by the bank "for the special purpose of allowing" the plaintiff to pay certain debts. Id., at 323-24.
In First City National Bank v. Long-Lewis Hardware Co.,363 So.2d 770 (Ala. 1978), the bank had loaned Reese $5,680 to purchase a car from Long-Lewis. When Reese wrote a personal check for the price of the car, the Long-Lewis salesman called the bank officer and confirmed that the loan proceeds for the car were there. The check was then accepted, but the bank thereafter set off the proceeds in Reese's account because a default in the terms of the security agreement was discovered.Id., at 771. The Court held this evidence to be sufficient to show "that a special deposit was created for the purpose of paying for the particular automobile." Id., at 773.
The case of Kaufman v. First National Bank of Opp, Ala.,493 F.2d 1070 (5th Cir. 1974), involved set offs against a "COD account" and an escrow account. Id., at 1071. The bank's customer also had a general account with the bank. As to the COD account, the bank had acknowledged when the account was opened that the only funds to be deposited in the account where those intended to be paid in compliance with a prior order of the Alabama Public Service Commission. Id., at 1073. As to the escrow account, the evidence showed that it was set up at the insistence of the SBA to assure that certain creditors, including the IRS, would be paid. Id., at 1074. The circuit court of appeals affirmed the decision of the district court that the deposits in the two accounts were "trust funds not subject to set off." Id., at 1071.
In one way, the case of In re Tonyan Construction Co., Inc.,28 B.R. 714 (Bankr.N.D.Ill. 1983), is similar to this case because there was a large deposit into Tonyan's account. Id., at 726. However, this was just one of many factors that, when added together, provided the bank with notice of the special nature of the deposit. The bankruptcy court summarized the pertinent testimony of the two bank officers as follows:
 "[Mr. Becker] knew Debtor was in the construction industry acting as general contractor and that the high balances in Debtor's accounts were occasioned by large deposits representing payouts on construction projects.
 He also knew that these large deposits would include moneys due to Debtor's subcontractors. Mr. Prust, who had had more than one hundred construction projects under his direction and control for payout, testified that it was customary for subcontractors to submit waivers of lien before receiving payment in order to initiate the flow of funds from the owner. In light of his awareness of Debtor's financial condition during the months prior to bankruptcy, he knew or should have known that Debtor would be unable to pay its subcontractors without first obtaining funds from the project owner. He also knew that a deposit as large as that made by Debtor on April 23rd would constitute proceeds from a construction project, with a substantial *Page 803 
portion representing moneys owed to subcontractors."
Id., at 726. These factors were deemed sufficient to put the Bank on notice as to the true nature of the deposit. In this regard the court said:
 "Knowledge that a depositor's business customarily requires the handling of funds in which others have an interest, coupled with other circumstances of equitable cognizance tending to individualize a deposit or line of deposits, may constitute notice of facts sufficient to put the depositary bank upon inquiry as to the true nature of the deposit."
Id., at 725-26. (Emphasis added.)
In the present case, there is no evidence to indicate that SouthTrust had any reason to believe that the deposit was in any way "special." There is nothing to show the prior course of deposits into and withdrawals from Bass's account, or whether the account had ever been used as a "clearing house" before.
 V
We do not address, in detail, Bass's claims that there was a fiduciary relationship between him and the bank, but we do set out the portion of his affidavit that he claims makes a triable issue. The affidavit is substantially similar to the allegations in the complaint, and reads, in part, as follows:
 "The initial note of October 15, 1982 gave rise to a banking relationship by and between myself and SouthTrust Bank of Baldwin County, which carried on for a period of some four years during which time the initial note was extended, amended, modified and reduced by the making of periodic payments by myself and my partners to SouthTrust Bank, which payments were applied to principal and interest. During the course of these banking relationships I and my other partners had repeated contacts with SouthTrust Bank during which time the initial $200,000.00 was reduced by principal and interest payments, which payments were accepted by the defendants, SouthTrust Bank of Baldwin County, and applied to reduce the principal and interest owing.
 "The restaurant venture for which the initial note was created failed and the restaurant was closed and all of these business facts were made known to representatives of SouthTrust Bank of Baldwin County. Notwithstanding the failure of the business venture for which the money was borrowed, I and the various partners continued over a period of time from 1982 through 1985 to service the initial obligation which again was periodically modified, altered, amended or reduced by defendant, SouthTrust Bank of Baldwin County. During the time that Bob's Sea Ranch Restaurant failed in Mobile, Alabama, and during the time that payments were made by myself and others in the obligation, which payments were applied to principal and interest accruing on the initial note, and modifications and extensions thereof to the defendant, SouthTrust Bank, I and other partners shared information in regard to Bob's Sea Ranch with representatives, agents and/or employees of defendant, SouthTrust Bank, and shared information as to the ability to repay the obligation to the defendant, SouthTrust Bank, which facts were known to the defendant, SouthTrust Bank, and during the time the defendant, SouthTrust Bank, acquiesced and consented to partial payments of principal and interest and, acquiesced and consented in causing the obligation to be modified, extended, amended and reduced over a four (4) year period (1982 through 1986)."
The facts submitted, in our opinion, show only a debtor-creditor relationship. McIntyre Electric Service, Inc.v. SouthTrust Bank of Mobile, 495 So.2d 1043 (Ala. 1986).
 VI
Bass's conversion claim is based on his argument that the bank illegally set off a deposit to pay the defaulted loan. Bass failed to show that there was a triable issue on this claim. *Page 804 
 VII
Although we affirm the summary judgment in this case, we find absolutely no merit in the bank's argument that Bass's filing of the lawsuit, and his subsequent taking of this appeal, were "without substantial justification" within the meaning of the Alabama Litigation Accountability Act. Ala. Code 1975, §12-19-270 et seq.
 VIII
Based on the foregoing, we are of the opinion that the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.
[1] The ninth payment was due August 15, 1986.
[2] Pranzo v. ITEC, Inc., 521 So.2d 983, 985 (Ala. 1988); Newmanv. First Nat. Bank of Mobile, 497 So.2d 106, 110 (Ala. 1986);Wilson v. Brown, 496 So.2d 756, 760 (Ala. 1986); Halbrooks v.Jackson, 495 So.2d 591, 593 (Ala. 1986); First National Bank ofMobile v. Horner, 494 So.2d 419, 421 (Ala. 1986); Kilpatrick v.Citibanc of Alabama/Andalusia, 494 So.2d 39, 40 (Ala. 1986);Rich Crest Homes, Inc. v. Vaughn Place, Inc., 485 So.2d 1123,1125 (Ala. 1986); American Pioneer Life Insurance Co. v.Sherrard, 477 So.2d 287, 291 (Ala. 1985); Torres v. State FarmFire Casualty Co., 438 So.2d 757, 758 (Ala. 1983). This is made even more true by virtue of the "non-waiver unless in writing" provision in the note. See, First National Bank v.Horner, supra (unreasonable to rely on bank officer's statement in light of language of the written guaranty), Williams, supra.