SHORES, Justice.
The Skate Palace, Inc., appeals from a summary judgment entered for the City of Irondale on the Skate Palace’s claims alleging intentional interference with contractual or business relationships and denial of equal protection of law under the United States and Alabama Constitutions. We affirm.
The Skate Palace, Inc., operated a skating rink in Irondale, Alabama, from 1982 until 1990, when it sold the rink. The rink attracted large crowds, particularly on Sunday evenings, and, to assist with security, Skate Palace regularly hired off-duty Iron-dale police officers. This practice ceased in August 1987, when Irondale Police Chief Wallace Gibson issued a directive forbidding Irondale police officers from working as security guards at the rink during their off-duty hours. After Gibson issued his directive, Skate Palace attempted to employ off-duty Jefferson County sheriff’s deputies, but Gibson would not allow the deputies to work in Irondale. Eventually, Skate Palace resorted to hiring private security guards.
On June 15, 1988, Mayor Charles H. Edgar and the Irondale City Council adopted Resolution 732-R-88. The resolution declared that Skate Palace was conducting business in such a manner as to constitute a nuisance and directed the Irondale city attorney to begin legal proceedings against Skate Palace to abate the nuisance. Iron-dale sued Skate Palace on June 16, 1988, in the Jefferson County Circuit Court, seeking a temporary restraining order, a preliminary injunction, and a permanent injunction directing Skate Palace not to conduct “Soul Night” — the event held on Sunday evenings that was the subject of Resolution 732-R-88. The trial court issued a temporary restraining order on June 17, 1988, and an amended T.R.O. on June 19, 1988; the court issued a preliminary injunction on June 27, 1988, restraining Skate Palace, its officers and employees from:
“(a) Conducting ‘Soul Night’ on any night and/or from remaining open after 8:00 p.m. on Sunday night;
“(b) Conducting any type of outdoor party or gathering on Skate Palace property and/or on property utilized by The Skate Palace, Inc. for business;
“(c) From using a public address system to play music or encourage any outdoor activities on The Skate Palace, Inc., property or property utilized by it.”
Skate Palace did not appeal this order and does not contest it.
Skate Palace filed a counterclaim on June 22, 1988, in response to Irondale’s original complaint. The counterclaim al *1354 leged that: 1) Irondale had entered into a course of conduct to wrongfully interfere with Skate Palace’s business by requesting owners of property adjacent to the skating rink not to allow Skate Palace patrons to park on their property; 2) Irondale had not formally and equally enforced the laws of Alabama and Irondale but had selectively enforced certain laws solely against Skate Palace patrons; 3) Irondale had denied Skate Palace equal protection under the laws and Constitution of the United States by not allowing its police officers, in their off-duty hours, to work for Skate Palace as security guards, while allowing the officers to work for other businesses as security guards (at trial Skate Palace made no similar claim regarding the Alabama constitution); and 4) Irondale had libelled and defamed Skate Palace. Skate Palace sought monetary damages and costs. Irondale filed a motion to dismiss the counterclaim, but it was denied by the trial court; the motion had requested, in the alternative, that Skate Palace give a more definite statement of the equal protection counts of its counterclaim.
On October 24, 1990, two years after the trial court had denied Irondale’s motion to dismiss, the trial court issued a 30-day order requiring the parties to take defaults or file answers or else see the case dismissed. Irondale filed its answer, along with a motion for summary judgment and an accompanying brief, on November 20, 1990; Skate Palace filed a memorandum in opposition to Irondale’s summary judgment motion on December 13, 1990. The trial court entered a summary judgment for Ir-ondale on December 28, 1990.
Skate Palace appeals the summary judgment only as it relates to its claims of intentional interference with contractual or business relations and denial of equal protection of law.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. The trial court must determine: 1) that there is no genuine issue of material fact; and 2) that the moving party is entitled to a judgment as a matter of law. See RNH, Inc. v. Beatty, 571 So.2d 1039 (Ala.1990). In determining if a summary judgment is proper, the trial court must view the motion in the light most favorable to the nonmovant, and, in reviewing a summary judgment, this Court is limited to reviewing the factors and evidence considered by the trial court when it granted the motion. Turner v. Systems Fuel, Inc., 475 So.2d 539 (Ala.1985).
Rule 56 is to be read in conjunction with the “substantial evidence rule” for actions filed after June 11, 1987. See § 12-21-12, Alabama Code 1975; Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Therefore, in order to defeat Irondale’s properly supported motion for summary judgment, Skate Palace must present “substantial evidence,” i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).

Intentional Interference with Business or Contractual Relationships.

Skate Palace argues here, for the first time, that Irondale intentionally interfered with Skate Palace’s employment contracts with off-duty Irondale police officers by forbidding them from working as Skate Palace security guards. In its counterclaim, Skate Palace alleged that Irondale interfered with its business operations by requesting owners of land adjacent to Skate Palace property to refuse Skate Palace patrons parking facilities, not that Ir-ondale intentionally interfered with any employment contracts between Skate Palace and Irondale police officers. A review of the record reveals that this latter argument was not presented to the trial court, but is being raised for the first time on appeal; for this reason, we may not consider the argument. Gotlieb v. Collat, 567 So.2d 1302, 1303 (Ala.1990).

Equal Protection of Law

Skate Palace claims that Irondale’s refusal to allow its police officers to work, in *1355 their off-duty hours, for Skate Palace as security guards, while allowing the same officers to work for other Irondale businesses, violates its right to equal protection of law under the United States and Alabama Constitutions. U.S. Const, amend. XIV; Ala. Const, art. I, §§ 1, 6, 22. There is no evidence to support Skate Palace’s equal protection claim.
Before Chief Gibson issued his directive, those Irondale officers who were employed by Skate Palace as security guards had voluntarily resigned their positions. Officer Joe Wade Boarfield, who had worked as a Skate Palace security guard since the rink first opened, testified at trial that he resigned before the Gibson directive was issued. Boarfield also testified without objection that the reason he and the other officers resigned their positions was the existence of a potential conflict of interest. Based upon this potential conflict, according to Boarfield, the officers felt it in their best interest to resign. The record clearly indicates that the officers voluntarily resigned from their positions with Skate Palace; any injury suffered by Skate Palace was not the result of the action of Chief Gibson or the City of Irondale.
Skate Palace sold its Irondale skating rink in 1990; it no longer operates a skating rink in Irondale, and, therefore, it no longer needs the services of security guards. The controversy in this case existed because Irondale allegedly would not allow its police officers to work at the Skate Palace rink, while allowing the officers to work for other Irondale businesses. By selling the skating rink, Skate Palace has removed any controversy, for it no longer needs the services of any security personnel, whoever they may be. For this Court to render a decision on Skate Palace’s equal protection claim would demand that we deal with the hypothetical and the abstract. This Court would, in effect, have to issue an advisory opinion, something that is permissble only under limited circumstances not applicable here. See Ala. Code, § 12-2-10.
Skate Palace claims that it was forced, by the actions of Irondale, to sell its skating rink. It presented no evidence to support such a contention. There is nothing in the record to indicate that the sale of the skating rink was not an ordinary, normal real estate transaction. With the sale of the skating rink, Skate Palace ended the controversy on which its equal protection claim was based, removing it beyond judicial cognizance.

Conclusion

Because Skate Palace’s claim of intentional interference with business relationships was not presented to the trial court, and because its equal protection claim presents no case or controversy, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX and KENNEDY, JJ„ concur.
HOUSTON, J., concurs specially.