RUSSELL, Judge.
Aurizon, Inc., filed a complaint against Kent Systems, Inc. (Kent), claiming $14,-311.18 due on account, plus interest. Kent *151 counterclaimed against Aurizon in the amount of $5,390. Motions for summary judgment filed by both parties were granted by the trial court. Aurizon appeals, contending that the trial court erred in granting Kent’s motion for summary judgment on its counterclaim. We reverse and remand.
We note at the outset that summary judgment is proper when there is no genuine issue of material fact and when the moving party is entitled to a judgment as a matter of law. Rule 56, Alabama Rules of Civil Procedure; McMullin v. AmSouth Bank, 512 So.2d 1382 (Ala.Civ.App.1987). If there is a prima facie showing by the moving party that no genuine issue of material fact exists, the burden shifts to the nonmoving party to show substantial evidence in support of his position. Bass v. SouthTrust Bank, 538 So.2d 794 (Ala.1989).
The record reveals that Erol Kent Ozte-kin, the president of Kent, stated in his affidavit that Kent entered into a contract with Aurizon to perform certain photographic services for $5,390, that the services were performed by Kent, and that Auri-zon refused to pay for the services.
Regina Jones, who was sales manager and customer service manager for Aurizon during the time period in question, stated in her affidavit that in the spring of 1989 she asked Oztekin to take photographs at “the Galleria” after she was instructed by Donald Comer, the president of Aurizon, to make the necessary arrangements to prepare a sales book for the purpose of demonstrating Aurizon’s printing abilities to prospective clients. The photographs were used in a sales book to show to a prospective client; however, Aurizon did not get the account with the client. Jones further stated that price was not discussed because it was Aurizon’s custom to “trade out” services with Kent. Kent had performed many similar jobs for Aurizon and had invoiced Aurizon for the jobs. The amount invoiced then would be credited to Kent’s open account with Aurizon. Jones presented the invoice received from Kent for the present job to Karen Kelley, Aurizon’s bookkeeper and secretary; however, Jones was no longer employed by Aurizon when the dispute arose. In the past, when invoices from Kent had not been credited to Kent’s account, Jones would make certain that they were credited. Jones also stated that Comer authorized “the work done by Kent that forms the basis of this lawsuit.”
Comer testified by affidavit that Kent owed Aurizon $9,333.39, plus 1.5% interest per month. He stated that he did not authorize Jones or any other employee to contract for work to be performed by Kent in the amount of $5,390. The authorization for work by Jones was only authorized to be at a fair and reasonable charge for the work performed. Comer also stated that Kent’s invoice was for three separate jobs, one of which was for portraits for salespersons’ cards invoiced at a rate of $300, rather than $120 which was charged for a similar job in September 1988. He objected to the price charged for those portraits. Comer further stated that there was no authorization for Kent to do any photographic work at a trade show on March 23, 24, and 25, 1989, another job that was listed on the invoice.
Karen Kelley stated that she never saw documentation for the work done by Kent prior to the January 1990 invoice in the amount of $5,390. Aurizon was normally invoiced by Kent within the month that work was done; however, she stated she was never contacted by anyone at Kent regarding any uncredited invoices between June 1989 and January 1990.
J. Mark Gooch, a professional photographer, stated in an affidavit that the value of photographic services varies depending on the use of the photograph. A “buy out is when a customer purchases all rights to a photograph, ... much the same as purchasing a copyright.... Obviously, this is going to be a much more valuable commodity to the purchasers than would be a piece of work which can be used for a particular purpose only.” This type of work sells at a higher price. Gooch also stated that Kent’s invoiced price for photographs for business cards is reasonable.
*152 Kent’s invoice to Aurizon evidences charges for work as follows: Commercial photography at the Parisian’s location (presumably at the Galleria) for a sales book, with a buy out for sales reproduction, at $500 per image, invoiced at $3,500; photography at a trade show for promotion/booths on March 23, 24, and 25, 1989, invoiced at $90; image rolls for reproduction in sales books, with a buy out for sales reproduction, invoiced at $900; and three photography sessions for portraits for salespersons’ cards, invoiced at $900 for releasing all film.
After granting both parties’ motions for summary judgment, the trial court clarified its order by stating that the balance to be paid to Aurizon by Kent was $3,943.39, plus interest of $1,419.62, and an attorney’s fee of $1,313.15, for a total of $6,676.16.
Aurizon contends that there was a genuine issue of fact to be determined by trial and that, therefore, the trial court erred in granting summary judgment in favor of Kent on its counterclaim. Aurizon claims that the affidavits of Oztekin and Jones contradict each other because Ozte-kin stated that Kent entered into a contract for photographic services for an “agreed upon contract price” and Jones stated that “never was any price for the shots discussed prior to the shooting, because it was our long-established custom with Kent Systems to trade out services.”
Aurizon further claims that without an agreed upon price, there should be a fair and reasonable compensation paid for services rendered. It states that there was no evidence produced concerning fair and reasonable compensation. However, we note that Gooch testified in his affidavit that a buy-out will sell for a higher price than photographic shots intended for a particular purpose only and that the price for the photographs for the business cards was more than reasonable. The only evidence presented by Aurizon disputing the reasonableness of the charges was in the affidavit of Comer and a supporting invoice, wherein he claims that an earlier job for a portrait for business cards had been $120, instead of the present $300. However, we find that, in view of the evidence presented by Kent in the affidavit of Gooch concerning the difference in a buy-out and the reasonableness of the charges, there is not sufficient evidence in support of Aurizon’s position to create an issue of material fact. No other evidence was presented to indicate that the charges were unreasonable.
Aurizon also claims that Kent’s charges have no relationship to previous prices. However, other than the evidence regarding the business cards, there is no evidence presented by Aurizon to support this claim.
Aurizon further claims that there was never authorization for any photographic work by Kent at the trade show on March 23, 24, or 25,1989, as invoiced in the amount of $990. However, we note that Kent’s invoice lists $900 of the $990 referred to by Aurizon as the charge for image rolls for reproduction in the sales books, with a buy-out for sales reproduction, leaving a charge of $90 as being disputed by Aurizon as not being authorized. Consequently, we find that there is a genuine issue of material fact and that, therefore, summary judgment was inappropriate as to the issue of authorization for work at the trade show.
Based on the above, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROBERTSON, P.J., and THIGPEN, J., concur.