Jerry W. Billings was injured when he slipped and fell on a ramp while making a delivery to a K Mart store. He and his wife, Patricia Billings, sued K Mart Corporation ("K Mart"); he alleged negligence and resulting personal injury, and his wife claimed damages for loss of consortium. The trial court entered a summary judgment in favor of K Mart. The Billingses appealed.
On a motion for summary judgment, the burden is initially on the movant to make a prima facie showing that there is no genuine issue of material fact (i.e., that there is no dispute as to any material fact), and that the movant is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.;McClendon v. Mountain Top Flea Market, Inc., 601 So.2d 957
(Ala. 1992); Elgin v. Alfa Corp., 598 So.2d 807 (Ala. 1992). "The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact." McClendon, at 958; Elgin, at 810-11.
Rule 56 must be read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can *Page 531 
reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). On an appeal from a summary judgment, this Court reviews the record in a light most favorable to the nonmovant and resolves all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama,613 So.2d 359 (Ala. 1993).
Mr. Billings worked for Childers Distributing Company, a beer distributor. On January 23, 1991, Mr. Billings drove his truck to the back door of the K Mart store to deliver beer. A concrete ramp approximately four-and-a-half feet high leads up to the back door. Mr. Billings noticed that the delivery truck for the Coors beer distributor was already there. Before entering the back door, Mr. Billings rang a bell to have a K Mart employee unlock the door. Mr. Billings then went to the front of the store to see how much beer would be needed. He returned to his truck to remove the beer and take it into the store to put it on display. He went up and down the ramp several times. After putting out all the beer, he went to the front of the store to get paid. Before leaving the back room, Mr. Billings noticed "slip sheets" wedged between a box cart and a box crusher in the back of the store. Slip sheets are slick pieces of silicone used by the Coors distributor to allow pallets of beer to slide easily on and off one another; they are gray in color and have little bumps on them. Randy Pugh, the Coors distributor, had left them there so that he could also go to the front of the store to get paid. During this time, K Mart employees were cleaning the back area and removing trash before leaving for the day.
When Mr. Billings and his helper returned from the front of the store, Nelson Holden, a K Mart "receiving manager," unlocked the back door for them to leave the store. As Mr. Billings walked through the door, he looked back to say something to his helper. According to Mr. Billings, he took approximately two steps outside the door and then slipped and fell on two slip sheets. He said that the slick sides of the slip sheets were facing each other and that this fact caused them to slip out from under him as he stepped on them. Mr. Billings suffered injuries to his back.
In support of its motion for a summary judgment, K Mart produced deposition testimony from Randy Pugh, the delivery person for the Coors distributor, who stated that it was his ordinary procedure to unload the Coors beer and then to leave the slip sheets and pallets in the back room while he went to the front of the store to get paid. K Mart also produced deposition testimony from Nelson Holden; he stated that he unlocked the back door for Mr. Billings, to let him out. He said he did not see Mr. Billings fall. Further, Mr. Holden stated that it was standard operating procedure for K Mart employees not to bother the slip sheets when they are inside the building and out of everyone's way. He also stated that whoever placed the slip sheets on the ramp would have been let out by one of the K Mart employees. K Mart also produced deposition testimony from the three other K Mart employees who had keys to the back door. They all stated that they had no knowledge of the slip sheets and did not know who put them on the ramp.
In response to the motion, Mr. Billings produced his own deposition testimony and resubmitted deposition testimony of Nelson Holden and Randy Pugh. Mr. Billings asserts, based on this same deposition testimony, that only Mr. Billings, Randy Pugh, and K Mart employees were in and out of the back room. As noted above, Mr. Pugh testified that, at the time of the accident, he was at the front of the store getting paid for his delivery and that he had left the slip sheets near the back door. Mr. Billings contends that the evidence showed that only K Mart employees remained in the back room when he and Pugh went to the front of the store to get paid. Mr. Billings further contends that because only K Mart employees could permit entrance to and from the back door, a K Mart employee must have put the slip sheets outside on the ramp. Therefore, Mr. Billings contends that K Mart actually created the condition that caused his injuries.
In East v. Wal-Mart Stores, Inc., 577 So.2d 459 (Ala. 1991), quoting Maddox v. K-Mart Corp., 565 So.2d 14, 16 (Ala. 1990), this *Page 532 
Court summarized the applicable law in "slip and fall" cases:
 " '[A] storekeeper is under a duty to exercise reasonable care to provide and maintain reasonably safe premises for the use of his customers. However, the storekeeper is not an insurer of the customer's safety, and is liable for injury only if he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition. The plaintiffs must prove that the injury was proximately caused by the negligence of [the storekeeper] or one of its servants or employees. Actual or constructive notice of the presence of the substance must be proven before [the storekeeper] can be held responsible for the injury. Furthermore, the plaintiffs must prove (1) that the substance slipped upon had been on the floor a sufficient length of time to impute constructive notice to [the storekeeper]; or (2) that [the storekeeper] had actual notice that the substance was on the floor; or (3) that [the storekeeper] was delinquent in not discovering and removing the substance.' "
577 So.2d at 460-61.
Accordingly, the plaintiff has the burden of proving actual or constructive notice of the dangerous condition. However, an exception exists when the hazard was created by the defendant. In such a situation, notice of the hazardous condition is imputed to the defendant. Dunklin v. Winn-Dixie of Montgomery,Inc., 595 So.2d 463, 465 (Ala. 1992).
Viewing the evidence in a light most favorable to Billings, we find the evidence to be in dispute as to how the slip sheets came to be on the ramp. Mr. Billings said he saw the slip sheets in the back room before he went to the front of the store. Randy Pugh testified that he left the slip sheets in the back room while he went to the front of the store. Nelson Holden testified that a K Mart employee would have had to open the door for whoever took the slip sheets outside and placed them on the ramp.
K Mart argues that it had no actual or constructive notice that the slip sheets were placed on the ramp, but concedes that a K Mart employee would have opened the door for the person who took them outside the door. K Mart contends that it had no knowledge as to how the slip sheets actually got placed on the ramp. However, Billings need not prove actual or constructive notice if the jury could infer that the hazard was created by K Mart. If it could make such an inference, then notice could be imputed to K Mart. See Dunklin v. Winn-Dixie, supra.
Therefore, we must conclude that K Mart did not make a prima facie showing that there is no genuine issue of material fact.
K Mart also argues that Mr. Billings was contributorily negligent. Viewing the evidence in a light most favorable to Billings, we cannot say, as a matter of law, that Billings was contributorily negligent. Based on Robertson v. Travelers Inn,613 So.2d 376 (Ala. 1993), we hold that this issue is a question for a jury to decide.
Therefore, the trial court's judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ALMON, SHORES and COOK, JJ., concur.
STEAGALL, J., concurs in the result.
MADDOX, J., dissents.