Rel: September 5, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

---

### SC-2024-0589

---

**Arethea Hurbert, an incompetent person, by and through her guardian ad litem and next friend, Leslie Barineau**

**v.**

**Stephon Green and The City of Birmingham**

**Appeal from Jefferson Circuit Court**
**(CV-21-902052)**

PER CURIAM.

In 2019, Arethea Hurbert was transported to UAB Hospital

("UAB") for a psychological evaluation after being arrested following disruptive public behavior. She was accompanied by Birmingham Police Department patrol officer Stephon Green ("Officer Green"). Once at UAB, Hurbert was placed on a gurney and each of her limbs were restrained.

At some point, Officer Green was asked to remove one of the restraints from one of Hurbert's arms so that a UAB staff member could administer an IV. What happened next is significantly disputed by the parties. What is not in dispute, however, is that Officer Green punched Hurbert two or three times in the face and that Hurbert sustained serious injuries, including a broken orbital socket, as a result of Officer Green's actions.

Following that incident, an internal investigation was conducted by the Birmingham Police Department ("the BPD"), which resulted in Officer Green being fired.[1] Officer Green was later indicted for second-

_____

[1]We note that Officer Green later sought review of the termination of his employment before the Jefferson County Personnel Board, which upheld the termination. Officer Green thereafter sought review of the termination of his employment through a petition for a writ of certiorari before a three-judge panel of the Jefferson Circuit Court. The panel allowed the City of Birmingham to intervene in that proceeding. After reviewing the record, the panel entered a judgment on September 11, 2024, reversing the termination. The City then sought review of that

degree assault.

Hurbert sued Officer Green and the City of Birmingham ("the City") in the Jefferson Circuit Court ("the trial court"), alleging claims of negligence and wantonness. While Hurbert's civil action against Officer Green was pending, his criminal case began.

After conducting a pretrial evidentiary hearing pursuant to § 13A-3-23(d), Ala. Code 1975, in which the "preponderance of the evidence" standard applied, the trial court in the criminal case ("the criminal court") ultimately entered a judgment dismissing the second-degree-assault charge against Officer Green after concluding that he was entitled to statutory stand-your-ground immunity. Neither Hurbert nor her lawyer took part in that pretrial evidentiary hearing.

Later, in Hurbert's civil case, the trial court entered a summary judgment in favor of Officer Green after concluding that the criminal court's judgment "created" a "presumption" that he had acted in self-defense when he struck Hurbert. The trial court wrote: "[T]his Court

---

judgment through a petition for a writ of certiorari to the Court of Civil Appeals, which affirmed the panel's judgment. The City has now filed a petition for a writ of certiorari with our Court asking us to review the Court of Civil Appeals' decision.

3

finds and holds that Ms. Hurbert has not met her burden of producing substantial evidence as to the existence of a genuine issue of material fact that would call into question the Criminal Court's Order Granting Immunity." Based upon that ruling, the trial court also entered a summary judgment in favor of the City.

Hurbert, by and through her guardian ad litem and next friend, Leslie Barineau, appeals the trial court's summary judgments in favor of Officer Green and the City. Officer Green has filed no brief with this Court, and the City makes no argument in support of the summary judgment for Officer Green in its brief on appeal.

Because we hold that the trial court departed from the summary-judgment standard, we reverse those judgments. In doing so, we express no opinion on the merits of whether Officer Green is entitled to stand-your-ground immunity in this action.

<u>Facts and Procedural History</u>

A. The Underlying Incident

In August 2019, Officer Green was temporarily assigned to work at the Birmingham jail. At that time, 51-year-old Hurbert was in the custody of the BPD for loitering and for disruptive public behavior after

4

experiencing a schizophrenic episode. While at the jail, Hurbert was allegedly behaving aggressively and violently toward the staff. Officer Green was told to transport Hurbert to UAB for a psychological evaluation.

According to Hurbert, Officer Green placed her in leg irons before putting her in the police car for transport. Although Hurbert says that she told Officer Green multiple times that the leg irons were too tight and her ankles were bleeding, Officer Green allegedly refused to adjust them.

As stated previously, once at UAB, Hurbert was placed on a gurney and her limbs were placed in restraints. At some point, Officer Green placed Hurbert's sandals on her chest and removed a restraint from one of her arms so that a UAB staff member could administer an IV. He then left the room.

When Officer Green reentered the room, Hurbert again complained that the shackles were too tight. According to Hurbert, at that point Officer Green began walking toward her and, because she did not know why he was approaching her, Hurbert picked up one of her sandals and acted as if she was going to throw it. Although she says that she did not throw the shoe, Hurbert alleges that Officer Green took the shoe from her

and then began hitting her in the face and body.

According to Officer Green, however, as he approached her, Hurbert struck him with her shoe and then began hitting him with a closed fist. To subdue her, Officer Green struck Hurbert in the face "two or three" times.

UAB personnel then intervened and pulled Officer Green away from Hurbert. As a result of the incident, Hurbert suffered serious injuries, including a broken orbital socket. Officer Green was subsequently investigated by the City for his use of force and, at some point, was fired by the BPD.[2] He was also arrested and charged with second-degree assault.

### B. Hurbert's Lawsuit Against Officer Green and The City

On July 16, 2021, Hurbert sued Officer Green, in his individual capacity, and the City in the trial court, alleging claims of negligence and wantonness. She also sought damages.

On August 25, 2021, the City filed its answer to Hurbert's complaint, in which it denied Hurbert's allegations against it. It also asserted various affirmative defenses, including immunity pursuant to §

---

[2]See footnote 1, supra.

11-47-190, Ala. Code 1975.[3]

That same day, Officer Green filed a motion to dismiss, in which he argued that he was entitled to peace-officer immunity pursuant to § 6-5-338, Ala. Code 1975,[4] because, he said, "it is undisputed that [he] was acting within the line and scope of his duties and employment" with the City when the alleged incident with Hurbert occurred. He also filed a

---

[3]That Code section states, in relevant part:

"No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty …."

[4]That Code section states, in relevant part:

"(a) Every peace officer … who is employed or appointed pursuant to the Constitution or statutes of this state …  and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."

counterclaim against Hurbert alleging assault and battery. As part of his counterclaim, Officer Green "demand[ed] judgment against [Hurbert] for damages in an amount to be determined by a jury, and for such other and further relief to which [he] may be entitled."

In response, Hurbert argued that Officer Green had failed to meet his burden that he was entitled to statutory stand-your-ground immunity. According to Hurbert, in his motion to dismiss, Officer Green had only made "the broad assertions that [he had been] 'performing a discretionary function, i.e., effectuating an arrest and transporting a suspect, during the incident,'" and, she asserted, that this was insufficient to shift the burden to her to refute his claim of immunity. Even if Officer Green had met his burden, Hurbert argued, she had adequately demonstrated that he had acted beyond his authority in the way he treated her after she was restrained at UAB and that he had violated her constitutional rights.

Following a hearing, on October 29, 2021, Officer Green's motion to dismiss was denied. Thereafter, Officer Green filed his answer to Hurbert's complaint, in which he denied the allegations against him but did not assert any affirmative defenses.

8

C. Civil Proceedings Stayed Pending Outcome of Officer Green's Criminal Case

Following the completion of some discovery, on January 31, 2022, Officer Green moved to stay any further discovery in Hurbert's lawsuit pending the outcome of the criminal proceedings against him in the criminal court. In support of his motion, Officer Green alleged that any responses he may be required to give during discovery in Hurbert's civil case could violate his right against self-incrimination under the Fifth Amendment to the United States Constitution. That motion was granted.

In his criminal action, Officer Green filed a motion to dismiss the second-degree-assault charge against him on the basis that he was entitled to statutory stand-your-ground immunity under § 13A-3-23(d). According to Officer Green, he was entitled to immunity because he struck Hurbert in self-defense.

An evidentiary hearing was held on Officer Green's motion, during which Officer Green testified that he was asked to transport Hurbert to UAB for a psychological evaluation. While Hurbert was initially calm after they arrived at UAB, Officer Green said, she suddenly became aggressive toward him and the nursing staff as they tried to administer an IV. He said that she then threw her shoe and struck him. As he tried

9

to restrain Hurbert, Officer Green said, she slapped him on the side of his face, which then led him to strike her in the face.

In opposition to Officer Green's motion, the State offered testimony from a UAB staff member who witnessed the incident between Hurbert and Officer Green. She testified that she saw Hurbert hit and kick Officer Green, which then led to his punching her in the face "two or three" times.

After hearing the above testimony, on December 12, 2022, the criminal court issued a judgment dismissing the criminal case against Officer Green. That judgment stated:

> "The statute and the case law appears very clear in this matter; therefore, this Court finds that under Alabama law, a person has the right to use reasonable force to protect or defend themselves from unlawful physical force, or what they reasonably believe to be the imminent use of unlawful physical force by another person. In the instant matter, this court finds that [Officer Green] had already been subjected to unlawful physical force by [Hurbert] when she kicked him, hit him with a shoe, and then punched him in the face. Further, it does not seem unreasonable that [Officer Green] could reasonably believe that if he did not immediately regain control of [Hurbert], that he was going to be further subjected to the continued use of imminent unlawful physical force. This Court finds nowhere in Alabama law that a person looses [sic] their ability to reasonably defend, [or] protect themselves[,] from someone's use of unlawful physical force simply because of their employment status with any particular entity. Thus, the fact that [Officer Green] was employed as a Birmingham Police Officer did not strip him of his statutory rights to defend himself.

10

"Additionally, this Court not only believes that [Officer Green] was justified to use reasonable physical force to defend himself, this Court also believes that as an officer sworn to protect the community, it was this officer's duty to immediately regain control of a prisoner/inmate, situated in the middle of a public medical facility, who was suspected of having a mental illness, and perhaps undergoing a psychotic incident.

"Based on the facts presented at the hearing, this Court finds by a preponderance of the evidence that [Officer Green's] actions were reasonable and justified under the circumstances, and that he acted in self-defense.

"[Officer Green's] Motion to Dismiss is hereby GRANTED.

"The Case is hereby DISMISSED."

(Capitalization in original.)

D. Civil Proceedings Recommence

After the criminal case against Officer Green was dismissed, the proceedings in Hurbert's civil action recommenced.

On April 24, 2023, Officer Green filed a "Renewed Motion to Dismiss as a Matter of Law," in which he asserted, for the first time, that he was entitled to statutory stand-your-ground immunity pursuant to § 13A-3-23(d). Because he had been granted immunity on that basis in his criminal case, Officer Green argued that he was likewise entitled to statutory stand-your-ground immunity in Hurbert's civil action and,

11

thus, that her claims against him were due to be dismissed. In support of his renewed motion, Officer Green attached only a copy of the criminal court's judgment.

At the request of the trial court, on May 16, 2023, Hurbert filed an initial and limited response to Officer Green's motion to address the issue of whether the criminal court's judgment entitled him to that same statutory stand-your-ground immunity in her civil action. In that limited response, Hurbert argued that the criminal court's judgment did not, by itself, dispose of her civil claims because, she said, Officer Green had failed to establish that either the doctrine of res judicata or the doctrine of collateral estoppel applied. She also argued, among other things, that the plain language of the procedure set forth in subsections (d)(2) and (d)(4) of § 13A-3-23 "only applies in criminal actions and has no application to civil actions." Finally, Hurbert argued that "any construction of Alabama's [self-defense] statute that would allow [the holding in the criminal court's judgment] to dispose of this civil action would violate the Alabama Constitution of 1901 …."

On June 28, 2023, the trial court denied Officer Green's motion. In support of its decision, the trial court acknowledged that "the

12

impact/interplay of stand your ground rulings in parallel civil and criminal legal proceedings has not yet been considered by Alabama's Appellate Courts," but it noted that the issue had been decided by the Florida Supreme Court in <u>Kumar v. Patel</u>, 227 So. 2d 557 (Fla. 2017). According to the trial court, the Florida Supreme Court has held that, even when a criminal-immunity determination is made before the filing of a civil suit, "'that determination cannot bind a potential civil plaintiff who is not a party to the criminal proceeding … because the law does not generally sanction binding a person to judicial determinations made in a proceeding to which he or she was not a party ….'" (quoting <u>Kumar</u>, 227 So. 3d at 560.)

Even after finding the Florida Supreme Court's reasoning to be persuasive, however, the trial court determined that it would hold an evidentiary hearing at which <u>Hurbert</u> could present evidence to "<u>rebut the presumption of immunity created by the [criminal court's] ruling</u>." (Emphasis added.) The trial court then stated that

> "it is this court's opinion and ruling that the [criminal court's] 'Order Granting Defendant's Motion for Immunity From Prosecution' <u>by itself</u> meets [Officer] Green's burden of proof for receiving civil stand your ground immunity. Thus, if Ms. Hurbert produces no evidence, or if she produces insufficient evidence to rebut that presumption this court will grant the

13

relief [Officer] Green seeks and dismiss this case."

(Emphasis in original.) The trial court thereafter set the case for a pretrial evidentiary hearing pursuant to § 13A-3-23(d)(2).[5]

E. Conversion of the Pretrial Evidentiary Stand-Your-Ground Hearing to a Summary-Judgment Hearing

About a month later, Hurbert moved to convert the "pretrial evidentiary hearing" to a summary-judgment hearing, arguing that Officer Green's stand-your-ground immunity defense in her civil case should not be decided by a judge in a bench trial or evidentiary hearing but, instead, should be decided under the summary-judgment standard in Rule 56, Ala. R. Civ. P. Hurbert further argued that, because she had demanded a jury trial on all disputed issues of fact, under Rule 56 the trial court must deny any attempt by Officer Green to obtain a pretrial

---

[5]That Code section states, in relevant part:

"(2) Prior to the commencement of a trial in a case in which a defense is claimed under this section, the court having jurisdiction over the case, upon motion of the defendant, shall conduct a pretrial hearing to determine whether force, including deadly force, used by the defendant was justified or whether it was unlawful under this section. During any pretrial hearing to determine immunity, the defendant must show by a preponderance of the evidence that he or she is immune from criminal prosecution."

judgment on the defense and let the jury decide the defense along with all other disputed factual issues at trial.

It does not appear from the record that Officer Green or the City filed a response or opposition to Hurbert's motion. Following additional filings, on September 1, 2023, the trial court entered an order granting Hurbert's motion and converted the hearing to a summary-judgment hearing.

During that summary-judgment hearing, when asked for Officer Green's position on applying the summary-judgment standard, his counsel stated:

> "I came prepared today to listen to [Hurbert's] evidence as you indicated in your ruling that if they present no evidence it's dismissed or if they present insufficient evidence it's dismissed.
>
> "….
>
> "… The statute is very clear on stand your ground. It includes civil immunity as you have stated. Not much more I can say. … We have a counterclaim, but we're here today as for [Officer] Green on a stand your ground. <u>Burden has shifted</u> to [Hurbert]. <u>We're here today to listen to [Hurbert]</u>."

(Emphasis added.) Thereafter, Officer Green's counsel also did not object to the use of the summary-judgment procedure or otherwise change his position when the trial court stated:

15

"[I]t seems to me that the defense doesn't seem to have a real concern over evidentiary hearing or summary judgment so why don't I rule on the record and with everybody's agreement I'll go into Alacourt after the hearing and enter a written order on the written motion saying I will rule that this is a summary judgment proceeding where at the beginning of the -- even before the proceeding begins I have ruled that [the criminal court's] order meets the defense burden of proving their affirmative defense of stand your ground.

"So defense doesn't need to say anything further on that defense. The burden shifts to [Hurbert] to provide substantial evidence or … genuine issues of material fact and then of course I'll hear defense out after [Hurbert] gets an opportunity to go over that evidence."

Hurbert submitted over 24 exhibits in opposition to Officer Green's motion. Among those exhibits were the transcript from Officer Green's criminal proceedings; Officer Green's deposition; an affidavit of Ebony Griffin, a UAB employee that witnessed the incident between Hurbert and Officer Green; and an affidavit of Officer Demarko Gaines, who was part of the team that investigated Officer Green's conduct following the incident.

Other than submitting the criminal court's judgment, Officer Green submitted no additional evidence in support of his summary-judgment motion.

After the hearing, on November 29, 2023, the trial court entered a

16

summary judgment in favor of Officer Green. In its judgment, the trial

court stated:

> "The vast majority of evidence submitted by Ms. Hurbert in opposition to [Officer] Green's motion for summary judgment in this case was taken before the Criminal case immunity hearing took place. … This Court holds that the pre-Criminal Case immunity hearing evidence does not change the immunity analysis in this case because (a) that information was, or could have been, presented to [the criminal court] before he made his immunity decision, and (b) the material facts contained in that evidence are not significantly different from the facts presented to [the criminal court].

> "The post-Criminal Case immunity hearing evidence presented in this case consists of: (a) the deposition of [Officer] Green in this case [Documents 173 and 175]; (b) an affidavit of Ebony Griffin in this case, taken in June 2023 [Document 188]; and (c) an affidavit of Demarko Gaines in this case, taken in June 2023 [Document 193]. The Court will analyze each of these items of evidence, in turn.

> "(a) Mr. Green's testimony supports his claim of statutory stand your ground immunity.

> "(b) Ms. Griffin's June 2023 affidavit testimony is substantially the same as the testimony she gave on August 1, 2019 [Document 152], on August 5, 2019 [Document 156], and in November 2022 at the Criminal Case immunity hearing [Document 171]. As a result, this Court holds that Ms. Griffin's affidavit testimony does not provide substantial evidence as to the existence of a genuine issue of material fact that would call into question the Criminal Court's Order Granting Immunity.

> "(c) Mr. Gaines'[s] June 2023 affidavit testimony is substantially the same as the testimony he gave in a sworn

statement on August 6, 2019, prior to the Criminal Case immunity hearing [see Documents 159, 193, and 194]. In addition, the material facts presented by Mr. Gaines in his testimony (both the 2019 testimony and the 2023 testimony) are consistent with the material facts [the criminal court] took into account in [its] immunity analysis in the Criminal Case immunity hearing. Such material facts include (i) that Ms. Hurbert was confined to a hospital gurney during the incident in question; (ii) that Ms. Hurbert was in leg irons and had only one arm free during the incident; (iii) that Mr. Green is a significantly larger person than Ms. Hurbert; (iv) that in Ms. Hurbert/the State's view, Ms. Hurbert did not present a threat to Mr. Green because of her size and the fact that she was substantially restrained during the incident; (v) that Mr. Green struck/punched Ms. Hurbert hard, in the eye, several times; and (vi) that Mr. Green's strikes/punches caused significant swelling to Ms. Hurbert's eye. After considering all of this evidence, [the criminal court] concluded that Mr. Green's actions 'did not amount to any sort of excessive or an unreasonable act,' that the actions were 'reasonable and justified under the circumstances,' and 'that he acted in self defense.' … As a result, [the criminal court] granted Mr. Green statutory stand your ground immunity and dismissed the Criminal Case. …

"After considering the arguments and legal briefs of counsel in this case, and the evidence presented, <u>this Court finds and holds that Ms. Hurbert has not met her burden of producing substantial evidence as to the existence of a genuine issue of material fact that would call into question the Criminal Court's Order Granting Immunity</u>.

"<u>WHEREFORE, this Court rules consistent with the Criminal Court and GRANTS Stephon Green's motion for summary judgment on grounds of statutory stand your ground immunity</u>. Plaintiff Arethea Hurbert's claims against Defendant Green are DISMISSED, WITH PREJUDICE, and with costs taxed as paid."

18

(Capitalization in original; emphasis added.)[6]

F. The City's Summary-Judgment Motion

The City thereafter moved for a summary judgment. Because the trial court had found that Officer Green was immune from civil liability in this case based on Alabama's self-defense statute, the City argued that it was likewise entitled to a judgment in its favor on Hurbert's vicarious-liability claims against it. In support of its motion, the City attached a copy of the criminal court's judgment and a copy of the trial court's November 29, 2023, summary judgment in favor of Officer Green on the ground that he was entitled to statutory stand-your-ground immunity.

In her response to the City's motion, Hurbert sought reconsideration of the summary judgment in favor of Officer Green because, she said, she had presented substantial evidence that a jury could have used to conclude that Officer Green had acted beyond the

_____

[6]Hurbert thereafter petitioned this Court for a writ of mandamus, in which she argued extensively that the procedure applied to her civil action below, as it relates to a statutory stand-your-ground immunity defense under § 13A-23-3(d) asserted by Officer Green, was erroneous. Accordingly, Hurbert asked this Court to issue a writ of mandamus directing the trial court to vacate its summary judgment in favor of Officer Green on the ground of stand-your-ground immunity. Our Court unanimously denied the petition by order. Ex parte Hurbert (No. SC-2024-0015, Mar. 22, 2024).

scope of his authority. Accordingly, she also argued that the City could not be entitled to a judgment in its favor on her vicarious-liability claims.

After holding a hearing, on February 9, 2024, the trial court denied Hurbert's motion for reconsideration. In a separate order, it granted the City's motion for a summary judgment.[7]

Hurbert then filed a motion in which she asked the trial court to vacate its judgments in favor of Officer Green and the City. That motion was denied by operation of law.

G. The Present Appeal

At some point during the pendency of this litigation, Hurbert became unable to handle her own affairs. In September 2024, the trial court appointed Leslie Barineau to serve as Hurbert's guardian ad litem. This appeal challenging the summary judgments entered in favor of Officer Green and the City followed.

Discussion

---

[7]Hurbert thereafter petitioned this Court for a writ of mandamus directing the trial court to vacate its summary judgments in favor of Officer Green and the City and to allow a jury to consider the merits and defenses on Hurbert's claims. Our Court unanimously denied the petition by order. Ex parte Hurbert (No. SC-2024-0144, Apr. 18, 2024).

On appeal, Hurbert argues, among other things, that the trial court misapplied the summary-judgment standard under Rule 56, Ala. R. Civ. P., when it entered a judgment in favor of Officer Green. As a result, Hurbert argues that the summary judgment in favor of Officer Green was erroneous and is thus due to be reversed. Because the summary judgment in favor of Officer Green must be reversed, Hurbert contends, the summary judgment in favor of the City must also be reversed. We will address each of Hurbert's arguments in turn.

A. The Trial Court's Summary Judgment in Favor of Officer Green

Rule 56 sets forth a two-tiered standard for determining whether a summary judgment should be entered. To be entitled to a summary judgment, a movant must make a prima facie showing (1) that no genuine issue of material fact exists and (2) that the movant is entitled to a judgment as a matter of law. See Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce "substantial evidence" as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin Cnty., 538 So. 2d 794, 797-98 (Ala. 1989).

21

"'"[A]n issue [of material fact] is genuine if reasonable persons could disagree."'" Black v. Comer, 920 So. 2d 1083, 1089 (Ala. 2005) (quoting Brigman v. Dejute, 593 So. 2d 51, 53 (Ala. 1991), quoting in turn William N. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 481 (1982)). When, as in this case, the defendant moves for a summary judgment based on an affirmative defense, our Court has explained that it is only "'"[w]hen there is no genuine issue of material fact as to any element of an affirmative defense, … and it is shown that the defendant is entitled to a judgment as matter of law,"'" that summary judgment is proper. Caton v. City of Pelham, 329 So. 3d 5, 18 (Ala. 2020) (quoting Wal-Mart Stores, Inc. v. Smitherman, 743 So. 2d 442, 445 (Ala. 1999), overruled on other grounds, Ex parte Rogers, 68 So. 3d 773 (Ala. 2010), and quoting in turn Bechtel v. Crown Cent. Petroleum Corp., 495 So. 2d 1052, 1053 (Ala. 1996)). "'"In determining whether there is a genuine issue of material fact as to each element of an affirmative defense, this Court must review the record in a light most favorable to the plaintiff (the nonmoving party) and must resolve all reasonable doubts against the defendant (the movant)."'" Id.

In its summary judgment in favor of Officer Green, the trial court found that the criminal court's judgment holding that Officer Green was entitled to stand-your-ground immunity and dismissing the criminal charges against Officer Green "bears great weight[] and by itself meets [Officer] Green's summary judgment burden of making a 'prima facie showing that no genuine issue of material fact exists and that [Officer Green] is entitled to a judgment as a matter of law." (Quoting Owens v. Ganga Hospitality, LLC, 352 So. 3d 1172, 1174 (Ala. 2021) (emphasis added).) As a result, the trial court explained that the burden had shifted to Hurbert to produce substantial evidence that would "call into question the Criminal Court['s] order."

The trial court found that the evidence that Hurbert produced was not enough to rebut the presumption created by the criminal court's judgment. Specifically, the trial court concluded that she had failed to meet her burden of showing that a "genuine issue of material fact that would call into question the Criminal Court's order granting immunity" existed. Thus, "consistent with the Criminal Court," the trial court entered a summary judgment in favor of Officer Green on the ground of statutory stand-your-ground immunity.

23

The trial court cited no authority in support of the proposition that the criminal court's ruling created a presumption that no genuine issue of material fact existed as to whether Officer Green was entitled to stand-your-ground immunity. Moreover, in his filings at the trial level, Officer Green cited no legal authority for that proposition. And, as noted above, he also has not filed a brief on appeal providing such authority. The City likewise cites no legal authority in support of that proposition and, in fact, makes no attempt whatsoever to support the trial court's ruling in favor of Officer Green.

### 1. The Preclusive Effect of the Criminal Court's Judgment

Hurbert contends that the trial court erred by concluding that the criminal court's judgment, by itself, created a presumption that no genuine issue of material fact existed as to whether Officer Green was immune from suit based on self-defense, thus shifting the burden to her to provide substantial evidence calling the findings of that judgment into question. In giving such deferential treatment to the criminal court's judgment, Hurbert contends, the trial court applied what she describes as a "species of res-judicata/collateral-estoppel" regarding the effect of the criminal court's judgment. Hurbert's brief at 49. According to Hurbert,

for a prior judgment to have the effect of precluding claims asserted in a later action, the requirements of res judicata or collateral estoppel must be met, including the requirement that both actions involve the same parties. Because she was not a party to the criminal action, Hurbert contends, the "same parties" element of res judicata and collateral estoppel has not been met and, thus, the criminal court's judgment cannot have a preclusive effect on the question of whether Officer Green is entitled to a summary judgment based on stand-your-ground immunity.

It is well settled that res judicata precludes "the relitigation of a claim that was, or could have been, adjudicated in a prior action." Bradberry v. Carrier Corp., 86 So. 3d 973, 985 (Ala. 2011). For res judicata to apply, there must be "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." Equity Res. Mgmt., Inc. v. Vinson, 723 So. 2d 634, 636 (Ala. 1998).

Collateral estoppel bars the relegation of issues that were litigated in a prior action. For that doctrine to apply, the following elements must

25

be met: "'"'(1) that an issue in a prior action was identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions.'"'" Stewart v. Brinley, 902 So. 2d 1, 10 (Ala. 2004) (quoting Lee L. Saad Constr. Co., v. DPF Architects, P.C., 851 So. 2d 507, 520 (Ala. 2002))(additional citations omitted).

As relevant here, our Court has recognized that a judgment in a criminal case cannot, under res judicata or collateral estoppel, have a preclusive effect in a civil action because, among other reasons, the parties to the actions are different. See, e.g., City of Gadsden v. Head, 429 So. 2d 1005, 1007 (Ala. 1983) (citing Bredeson v. Croft, 295 Ala. 246, 326 So. 2d 735 (1976)). A criminal proceeding "'"is between the state and the accused party, and seeks vindication of a public right, while in the civil suit the purpose sought is vindication of purely private rights and interests."'" Bredeson, 295 Ala. at 249, 326 So. 2d at 736 (quoting Sovereign Camp W.O.W. v. Gunn, 224 Ala. 444, 449, 140 So. 410, 415 (1932)) (additional citation omitted).

Here, it is undisputed that the parties to the underlying parallel

26

criminal and civil proceedings were not the same. In Officer Green's criminal proceedings, the State was the party bringing charges against him, not Hurbert. In Hurbert's civil action, Hurbert -- not the State -- was the one bringing the action against Officer Green. Additionally, unlike in the criminal proceeding, in the civil proceeding Hurbert sought vindication of her private rights, not a public right on behalf of the State. Thus, based on the foregoing, to the extent the trial court intended to give any kind of preclusive effect to the criminal court's judgment, we agree with Hurbert that it did so in error.[8]

### 2. The Trial Court's Failure to Correctly Apply the Summary-Judgment Standard

Hurbert next contends that, by giving the criminal court's judgment such great deference and concluding that it alone met Officer Green's

---

[8]We note briefly that there are also due-process concerns associated with using a judgment in a criminal proceeding against a civil plaintiff who was not a party in the criminal proceeding. For instance, in this case, the trial court's summary judgment in favor of Officer Green placed some emphasis on the fact that the evidence submitted by Hurbert at the summary-judgment hearing "could have been" submitted during the criminal proceeding. We fail to see why this point is relevant given that the State was the opposing party in Officer Green's criminal proceeding. As a result, Hurbert had no say in what evidence was or was not presented to the criminal court.

burden of establishing that no genuine issue of material fact existed as to whether he acted in self-defense in this case, the trial court placed a higher burden on her than what must be imposed on a nonmovant under Rule 56 and our caselaw applying that rule. She also contends that it forced her to "start [from] behind" because the criminal court's judgment "carried the defense across the goal line on the evidentiary burden" such that Hurbert had to "try to push back an already met burden." Hurbert's brief at 52.[9]

Our Court has never had the occasion to address exactly what impact, if any, an adjudication in favor of a defendant on a stand-your-ground affirmative defense in a criminal case should have on the defendant's burden in a civil case, especially at a summary-judgment hearing. However, our Court has previously acknowledged that while a criminal court's findings may be used for certain limited evidentiary

_____

[9]Because it is undisputed that Officer Green did not object to the use of a summary-judgment proceeding in lieu of a pretrial evidentiary stand-your-ground hearing under § 13A-3-23(d), he waived his right to such a hearing. Likewise, at no point did the City object to the use of the summary-judgment procedure, either at that hearing or thereafter. Thus, any failure to follow the procedure in § 13A-3-23(d) as described by our Court in Ex parte Teal, 392 So. 3d 992 (Ala. 2023), and Ex parte Teal, 336 So. 3d 165 (Ala. 2021), is not at issue.

purposes in a civil proceeding, they are not "dispositive" of any issues raised in that proceeding and, thus, cannot establish that no genuine issue of material fact exists.

Our Court's prior decision in <u>Bredeson v. Croft</u> provides the best illustration of this. In that case, Ruth Croft, the beneficiary of two insurance policies with two different companies, filed suit against each company, seeking a judgment declaring that she was entitled to the proceeds of each as the wife of her deceased husband. Croft later moved for summary judgments in her favor pursuant to Rule 56.

In opposition to Croft's summary-judgment motions, the insurance companies offered affidavits recounting testimony from a criminal trial on charges that Croft had killed her husband. In response, Croft amended her Rule 56 motion to include, among other things, the circuit-court records finding her not guilty by reason of insanity. The trial court in the declaratory-judgment action ultimately granted Croft's summary-judgment motions.

On appeal, our Court held that genuine issues of material fact remained and, thus, reversed the trial court's summary judgments in favor of Croft. Specifically, we explained:

"In <u>Sovereign Camp W.O.W. v. Gunn, (I)</u>, 224 Ala. 444, 140 So. 410 [(1932)], this court cited the following from a West Virginia case with approval:

"'In the case of <u>Interstate Dry Goods Stores v. Williamson</u>, 91 W. Va. 156, 112 S.E. 301, 302, 31 A.L.R. 258 [(1922)], it is said: "<u>It is uniformly held that a judgment of conviction or acquittal in a criminal case is not proper evidence in a civil case, to establish the facts which were necessary to be established in order to secure such conviction or acquittal. The parties to the criminal prosecution are different. The rules of evidence are different in the two classes of cases, and the purposes and objects sought to be accomplished are essentially different. … The criminal proceeding is between the state and the accused party, and seeks vindication of a public right, while in the civil suit the purpose sought is vindication of purely private rights and interests</u>." -- Freemen, Judgments, § 319; Black, Judgments, § 529; R.C.L. (title Judgments) §§ 476-7; <u>Micks v. Mason</u>, 145 Mich. 212, 108 N.W. 707, 9 Ann. Cas. 291, 11 L.R.A. (N.S.) 653 [(1906)], and note.'

"One year later, 1933, the same case, [<u>Sovereign Camp W.O.W. v. Gunn,</u>] <u>Gunn, (II)</u>, 227 Ala. 400, 150 So. 491 [(1933)], was here again and this court said:

"'<u>But, it must be borne in mind, that the record of conviction is a solemn judicial finding, and should be clothed with a prima facie presumption of verity. Upon the introduction of such record, the burden of proof shifts to plaintiff on that issue.</u>

"'The evidence to overcome such prima facie showing is not to be limited to an attack on the

judgment of conviction on grounds of fraud or perjury, but all evidence tending to prove the innocence of the beneficiary in fact is to be admitted, and weighed under proper instructions from the court.'

"The case of <u>Fidelity-Phenix Fire Ins. Co. of N.Y. v. Murphy, (II)</u>, 231 Ala. 680, 166 So. 604, (1936), and <u>Gunn, (II)</u>, <u>supra</u>, are cited, among others, in <u>Roden & Son v. State</u>, 30 Ala. App. 229, 3 So. 2d 420 [(1941)], as authority for the statement of the general principle that '… <u>a judgment in a civil case is not conclusive as res judicata in a criminal case, or vice versa, there being no mutuality of parties and a different degree of proof, respectively, being required</u>. …'"

295 Ala. at 249, 326 So. 2d at 736-37 (emphasis added).

Our Court explained that the trial court had erred in accepting Croft's acquittal as a basis for the summary judgments. Specifically, we explained that by entering the summary judgments, "the trial court was implying that all issues in the civil cases were resolved by the facts that evolved in the criminal case, and that no issue of fact continued to exist." 295 Ala. at 249, 326 So. 2d at 737. Our Court also explained:

"<u>By definition, an acquittal in a criminal case does not resolve all factual issues, but leaves factual issues doubtful</u>, as noted by this court in <u>Fidelity-Phenix Fire Ins. Co. of N.Y. v. Murphy, (I)</u>, 226 Ala. 226, 146 So. 387, at 392 [(1933)], citing <u>Schindler v. Royal Ins. Co.</u>, 258 N.Y. 310, 179 N.E. 711, 80 A.L.R. 1143 (1933):

"'… <u>a judgment of acquittal is only a determination that guilt has not been established</u>

31

> beyond a reasonable doubt, although a <u>preponderance of evidence might point thereto</u>, ...'
>
> "Summary judgment 'is not a substitute for a trial of disputed issues of fact.' 3 Barron and Holtzoff, <u>Federal Practice & Procedure</u>, § 1231."

295 Ala. at 249-50, 326 So. 2d at 737 (emphasis added).

Our Court then concluded (1) that the trial court had erred by determining that the judgment of acquittal was "dispositive" for purposes of summary judgment and (2) that genuine "issues as to material facts remained when the summary judgments were entered." 295 Ala. at 250, 326 So. 2d at 737. Our Court also emphasized that "[s]ummary judgment 'is not a substitute for a trial of disputed issues of fact.'" <u>Id.</u> (citation omitted).

In short, <u>Bredeson</u> stands for the proposition that the "'<u>record of conviction</u>'" from a criminal case may have evidentiary value in a subsequent civil case and, thus, may be used as evidence in the civil case. 295 Ala. at 249, 326 So. 2d at 736 (emphasis added). However, <u>Bredeson</u> does not stand for the proposition that a particular result in a criminal case is dispositive of whether a genuine issue of material fact exists in a separate civil case.

This reasoning is consistent with decisions of courts in other

32

jurisdictions that have decided the question now before us. See, e.g., Kumar v. Patel, 227 So. 3d 557, 560 (Fla. 2017) (holding that, even when a stand-your-ground criminal-immunity determination is made in a criminal case, "that determination cannot bind a potential civil plaintiff who is not a party to the criminal proceeding … because the law does not generally sanction binding a person to judicial determinations made in a proceeding to which he or she was not a party").

In the present case, we need not reach the question of whether the criminal court's judgment was admissible evidence. Even if it was, as the legal principles above make clear, it is not dispositive as to whether no genuine issue of material fact exists in Hurbert's civil case.

Regardless, here, the trial court did not apply the normal summary-judgment standard.  In fact, during the hearing on Hurbert's motion to convert the pretrial evidentiary hearing into a summary-judgment hearing, the trial court stated that, because of the ruling in the criminal case as to Officer Green's entitlement to stand-your-ground immunity, it believed that "it's a higher burden than that.  I don't know how to define that burden because I don't see a lot of guidance in the court cases." (Emphasis added.) At another point during that hearing, the trial court

appeared to state yet another standard: "I have found as a matter of law to be clear [Officer Green] has met [his] burden proving <u>as a matter of law</u> [the criminal court]'s order proves the affirmative defense." (Emphasis added.) In later describing what it had done in ruling on Officer Green's motion, the trial court stated as follows: "<u>I didn't look at it de novo, I looked at it in some different standard</u>, which, hopefully, eventually, the appellate courts will give us an answer on exactly how that should go." (Emphasis added.) It further stated: "I would have to undo that ruling more or less to grant [Hurbert's] relief sought in my civil case."

If a summary judgment is being considered, the trial court must apply the summary-judgment standard. Under Rule 56, it is the burden of a defendant moving for a summary judgment to establish (1) that no genuine issue of material fact exists regarding the claims in the complaint and (2) that the defendant is entitled to a judgment as a matter of law. See <u>Blue Cross & Blue Shield of Alabama v. Hodurski</u>, 899 So. 2d 949, 952-53 (Ala. 2004).

Summary judgment is fundamentally different from what the criminal court was being asked to consider in Officer Green's criminal

case.

The criminal court, applying the "preponderance of the evidence" standard, as required by § 13A-3-23(d), determined, based on the evidence before it, that it was more likely than not that Officer Green's conduct satisfied the elements of a stand-your-ground defense. That was a decision based upon weighing the facts and determining credibility -- something that the criminal court was authorized to do at that stage.

In contrast, "[a]t the summary judgment stage, it is not the trial court's function '"to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."'" Nix v. Franklin Cnty. Dep't of Hum. Res., 234 So. 3d 450, 456 (Ala. 2017) (quoting Camp v. Yeager, 601 So. 2d 924, 927 (Ala. 1992), quoting in turn Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Furthermore, "'"[a] court may not determine the credibility of witnesses on a motion for summary judgment."'" Wilson v. Teng, 786 So. 2d 485, 498 (Ala. 2000) (quoting Ex parte Usrey, 777 So. 2d 66, 68 (Ala. 2000), quoting in turn Phillips v. Wayne's Pest Control Co., 623 So. 2d 1099, 1102 (Ala. 1993)).

In concluding that the criminal court's judgment created a presumption that Officer Green had acted in self-defense, the trial court

impermissibly gave both weight and credibility to the criminal court's judgment and the facts underlying it. Further, the trial court appears to have to precluded consideration of certain evidence presented by Hurbert, and, in doing so, the trial court also applied some higher, undefined evidentiary standard against Hurbert. As the legal principles discussed above make clear, the findings by a criminal court are not dispositive of whether a genuine issue of material fact exists in a separate civil case and, thus, do not create a presumption that summary judgment is due.

At this point, having determined that the trial court admittedly applied some higher, undefined evidentiary standard against Hurbert during the summary-judgment hearing below, we are compelled to reverse the summary judgment in favor of Officer Green and to remand this case to the trial court for it to consider whether, based on the totality of the evidence before it and without according any presumptions in favor of the criminal court's judgment, a genuine issue of material fact existed as to the claims and defenses in this action. As a result, we need not and will not address whether the evidence presented by either Officer Green or Hurbert warrants summary judgment. Therefore, the trial court's

summary judgment in favor of Officer Green is reversed.[10]

### B. The Trial Court's Summary Judgment in Favor of the City

As stated previously, the City moved for a summary judgment after the summary judgment in favor of Officer Green based on stand-your-ground immunity was entered. In its motion, the City argued that "Alabama law is clear that a municipal peace officer's immunity likewise benefits the municipality." Because the trial court found Officer Green to be immune from civil liability in this case based on self-defense, the City argued, it was entitled to a judgment in its favor on Hurbert's vicarious-liability claims against it. On appeal, the City maintains this position in support of its contention that the trial court's summary judgment in its favor should be upheld.

In her brief on appeal, Hurbert states that she does not take issue with the rule that when an agent or employee of a municipality is found to be immune, the municipality likewise cannot be held liable to a plaintiff. However, because the trial court applied the wrong standard in

---

[10]We note that Hurbert also briefly contends that, to the extent they apply, the principles articulated in our Court's decision in Ex parte Teal, 392 So. 3d 992 (Ala. 2023), violate her constitutional rights to a jury trial. Thus, Hurbert contends that that case should be overruled. Given our decision here, we need not reach this issue.

entering a summary judgment in Officer Green's favor, Hurbert likewise contends that the City was not entitled to a summary judgment.

Because we are reversing the trial court's summary judgment in favor of Officer Green, we agree that we must also reverse the summary judgment in favor of the City for the reasons set forth in this opinion.

Conclusion

Based on the foregoing, we reverse the trial court's summary judgments in favor of Officer Green and the City. We remand the case for proceedings consistent with this opinion.[11]

REVERSED AND REMANDED.

Stewart, C.J., and Mendheim, Cook, and McCool, JJ., concur.

Shaw and Bryan, JJ., concur in the result, with opinions.

Wise and Lewis, JJ., concur in the result.

Sellers, J., dissents, with opinion.

---

[11]Because the resolution of these issues is dispositive in this case, we pretermit discussion of any other issues raised by the parties. See Jackson Hosp. & Clinic, Inc. v. Murphy, 343 So. 3d 490, 498 n.3 (Ala. 2021) (stating that the Court would pretermit discussion of remaining issues in light of the dispositive nature of another issue).

SHAW, Justice (concurring in the result).

I respectfully concur in the result.

It appears that the plaintiff below, Arethea Hurbert, acquiesced, at least in part, to the manner in which the Jefferson Circuit Court in this civil action ("the trial court") considered the judgment entered by a court in a separate criminal prosecution ("the criminal court") of one of the defendants, Officer Stephon Green, when the trial court entered summary judgments for Officer Green and the City of Birmingham. However, I believe that the trial court incorrectly concluded that there was no genuine issue as to any material fact and that it therefore erred in entering the summary judgments. Rule 56(c), Ala. R. Civ. P.

> "This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v.

39

> SouthTrust Bank of Baldwin County, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So. 2d 870, 871 (Ala. 1989)."

Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004). See also Price v. Alabama One Credit Union, 397 So. 3d 549, 553 (Ala. 2023).

An acquittal in a criminal case is of questionable value in a civil case; an acquittal generally shows only that the State failed to meet its burden of proof. "By definition, an acquittal in a criminal case does not resolve all factual issues, but leaves factual issues doubtful …." Bredeson v. Croft, 295 Ala. 246, 249, 326 So. 2d 735, 737 (1976). See also City of Gadsden v. Head, 429 So. 2d 1005, 1007 (Ala. 1983), and Cantrell v. Cantrell, 367 So. 3d 426, 447 (Ala. Civ. App. 2022). Generally, an acquittal shows that the State failed to prove all the elements of the crime beyond a reasonable doubt.

A conviction of a criminal offense, however, can be considered as a factual determination subject to rebuttal:

"'But, it must be borne in mind, that the record of conviction is a solemn judicial finding, and should be clothed with a prima facie presumption of verity. Upon the introduction of such record, the burden of proof shifts to plaintiff on that issue.

"'The evidence to overcome such prima facie showing is not to be limited to an attack on the judgment of conviction on grounds of fraud or perjury, but all evidence tending to prove the innocence of the beneficiary in fact is to be admitted, and weighed under proper instructions from the court.'"

Bredeson, 295 Ala. at 249, 326 So. 2d at 736 (quoting Sovereign Camp W.O.W. v. Gunn, 227 Ala. 400, 403, 150 So. 491, 493 (1933)).

A court's determination that one is immune to a criminal charge under § 13A-3-23, Ala. Code 1975, is not a mere acquittal. Under § 13A-3-23(d)(1), "[a] person who uses force, including deadly physical force, as justified and permitted in this section is immune from criminal prosecution and civil action for the use of such force, unless the force was determined to be unlawful." (Emphasis added.) To establish such immunity in a criminal action, the defendant "must show by a preponderance of the evidence that he or she is immune from criminal prosecution." § 13A-3-23(d)(2). Under § 13A-3-23(d)(3), "[i]f … the court concludes that the defendant has proven by a preponderance of the evidence that force, including deadly force, was justified, the court shall

41

enter an order finding the defendant immune from criminal prosecution and dismissing the criminal charges." Establishing immunity under § 13A-3-23 is something that must be proven by the defendant by a preponderance of the evidence; it is not a finding of an absence or insufficiency of proof. Officer Green met that burden in his criminal case, and the criminal court held: "[T]his Court finds by a preponderance of the evidence that the Defendant's actions were reasonable and justified under the circumstances, and that he acted in self defense." The dismissal was not an acquittal, but a finding of the facts necessary to establish immunity under § 13A-3-23. Officer Green's burden of proof for establishing immunity under § 13A-3-23 in his civil case is <u>the same</u> burden of proof as in his criminal case.

After his criminal charge was dismissed, Officer Green filed a "renewed motion to dismiss" in the civil action, arguing that his use of force was "determined to be lawful" and that he was entitled to immunity from Hurbert's civil claims. Attached to that motion was the judgment of the criminal court finding immunity. Apparently, no evidence from the criminal proceeding was included with the judgment at that time. The trial court <u>denied</u> that motion. In its order, it stated:

"... <u>Hurbert agrees that the [immunity ruling in the criminal case] bears weight and can be considered in regard to the question of whether Mr. Green is entitled to immunity in this case</u>. However, Ms. Hurbert disagrees that the Criminal Division ruling is automatically dispositive of this case. Specifically, Ms. Hurbert objects to automatic immunity for Mr. Green in this case because neither she nor her civil lawyers participated in the stand your ground evidentiary hearing and related proceedings in the Criminal Division.

"....

"... <u>Hurbert must be provided an evidentiary hearing in this case where she can present evidence to rebut the presumption of immunity</u> created by the Criminal Division's ruling. Mr. Green shall, of course, also have the opportunity to present evidence at that hearing....

"....

"To be clear, it is this Court's opinion and ruling that the Criminal Division's 'Order Granting Defendant's Motion for Immunity from Prosecution' <u>by itself</u> meets Mr. Green's burden of proof for receiving civil stand your ground immunity. Thus, <u>if Ms. Hurbert produces no evidence, or if she produces insufficient evidence, to rebut that presumption</u> this Court will grant the relief Mr. Green seeks and dismiss this case."

(Emphasis added.)

Hurbert filed a motion requesting that the hearing be considered a summary-judgment hearing. She further stated:

43

"[The trial court] correctly recognized that [the criminal court's] order granting the defendant, Stephon Green, the stand-your-ground ('SYG') affirmative defense as a matter of law in the criminal action does not collaterally estop Hurbert, the plaintiff in this action, from prosecuting her tort claims in this case. This Court also <u>correctly held that [the immunity ruling in the criminal case] is just evidence, which should be considered with all the other evidence produced by the parties</u>."

(Emphasis added.)[12]

I agree that a criminal court's finding of immunity under § 13A-3-23 is not "dispositive" for purposes of a civil case. Here, Hurbert was not a party in the criminal case, she was not able to produce evidence to show that Officer Green was not entitled to immunity in that case, and she was unable to present legal arguments in that case. Her evidence and strategy may be completely different from the State's in the criminal case.

The trial court clearly struggled with the significance of the criminal court's decision and how it should impact the civil case. It appears that the trial court ultimately considered the criminal court's

---

[12]In a hearing below, counsel for Hurbert indicated: "I think [the immunity ruling in the criminal case] is evidence of a certain position," and "[s]o what happened in [the] order is evidence, but we get to submit evidence as well."

judgment <u>as substantial evidence</u> for the purpose of deciding whether to enter a summary judgment on the basis that Officer Green had met the elements to establish immunity under § 13A-3-23. Hurbert requested that Officer Green's motion be considered as one for a summary judgment, and <u>Hurbert acknowledged</u> that the criminal court's judgment was "evidence" that "should be considered with all the other evidence produced by the parties." In its summary judgment in favor of Officer Green, the trial court stated: "Officer Green's request is styled as a motion to dismiss pursuant to [Rule 12, Ala. R. Civ. P.,] but this Court is treating the motion as one for summary judgment pursuant to [Rule 56, Ala. R. Civ. P.]" The trial court also stated:

> "This Court has previously ruled that the Criminal Division Immunity Order bears great weight, and by itself meets Mr. Green's summary judgment burden of making a 'prima facie showing that no genuine issue of material fact exists and that the movant [Officer Green] is entitled to a judgment as a matter of law.' <u>Owens v. Ganga Hospitality, LLC</u>, 352 So. 3d 1172, 1174 (Ala. 2021) (internal citations omitted). However, this Court has also ruled that Ms. Hurbert is entitled to an evidentiary hearing in this case to determine whether she can overcome the presumption created by the Criminal Division Immunity Order <u>by providing substantial evidence as to the existence of a genuine issue of material fact</u> that would call into question the Criminal Court Order."

(Emphasis added; citations omitted.)

Given that Officer Green was required to prove immunity in his criminal case and that the criminal court found that he did so by a preponderance of the evidence, it is not clear that the criminal court's judgment would not constitute at least substantial evidence that he had met the elements to establish immunity under § 13A-3-23. Further, it appears that the trial court required Hurbert <u>only to produce substantial evidence to defeat Officer Green's motion</u>, clearly showing that it considered the criminal court's judgment as mere substantial evidence itself. It ultimately found, however, that Hurbert did not demonstrate a question of fact:

> "[T]his Court finds and holds that Ms. Hurbert has not met her burden <u>of producing substantial evidence</u> as to the existence of a genuine issue of material fact that would call into question the Criminal Court's Order Granting Immunity."

It might be argued that the trial court gave a heightened presumption in favor of the criminal court's judgment, but the trial court stated that the criminal court's judgment created only a "'prima facie

showing."[13]  However, reviewing the ruling de novo, as the standard of review requires, I would agree that, without any presumption, the criminal court's judgment simply amounts to substantial evidence -- a prima facie showing -- that Officer Green was entitled to immunity.  The burden thus shifted to Hurbert to produce substantial evidence to create a genuine issue as to any material fact.

After a review of the evidence submitted by Hurbert, I believe that she demonstrated a genuine issue of material fact as to whether Officer Green's use of force was justified.  Section § 13A-3-23(a) states:

> "A person is justified in using physical force upon another person in order to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he or she may use a degree of force which he or she reasonably believes to be necessary for the purpose."

---

[13]The decision in Kumar v. Patel, 227 So. 3d 557, 561 (Fla. 2017), held that Florida's stand-your-ground statute did "not confer civil liability immunity to a criminal defendant who is determined to be immune from prosecution in the criminal case."  The trial court cited this case in denying Officer Green's renewed motion to dismiss and holding that Hurbert was entitled to present evidence to rebut any presumption that the criminal court's judgment created.  Kumar does not address whether a criminal court's determination can be considered as substantial evidence for purposes of determining immunity in a related civil proceeding.

Hurbert submitted the affidavits of two witnesses to the incident.[14] Ebony Griffin, a patient-care technician at the hospital where the incident occurred, witnessed Officer Green punch Hurbert "several times to the face and chest while she was shackled to her hospital bed." Griffin testified that Hurbert "had been complaining that her leg irons/cuffs were too tight," that she was "immobile," and that it "was not necessary that Officer Green go into her room." Further, Griffin stated: "Officer Green was literally holding her with his right hand and punching her with his left hand. He was whaling on her. On a scale of 1 out of 10, 10 being hitting her as hard as he can, Officer Green was giving it to her all the way." Griffin also stated: "I do not believe Ms. Hurbert was a threat to Officer Green nor could she have injured him in any way being attached to the bed the way she was. She is tiny woman and he is huge."

Demarko Gaines, who was on duty with the UAB Police Department during the incident, witnessed Officer Green punch Hurbert "while she was cuffed to her hospital bed." Officer Gaines indicated that he did not see Hurbert hit Officer Green with a shoe, as Officer Green

---

[14]Hurbert also submitted transcripts of witness statements given after the incident. It is unclear whether those statements were given under oath or are otherwise admissible evidence.

alleged, and that "[s]he was not striking him or anything like that. I never saw her kick him at any time. She was not able to kick with her leg irons on.  It was not possible."

This testimony, if true, calls into question whether Officer Green was reasonable in believing that Hurbert was using unlawful physical force against him and whether it was reasonable for him to believe that the degree of force he used was necessary.  Summary judgment was thus inappropriate.

For the reasons stated above, I would reverse the trial court's summary judgment in favor of Officer Green, as well as the judgment in favor of the City of Birmingham.  Because the standard of review is de novo, and because I believe that the motions for a summary judgment should not be granted, I disagree with any directive in the main opinion "to remand this case to the trial court for it to consider" those motions a second time.  ___ So. 3d at ___.

BRYAN, Justice (concurring in the result).

I concur in the result regarding the Court's decision to reverse the summary judgments entered by the Jefferson Circuit Court ("the trial court"). Section 13A-3-23(d), Ala. Code 1975, provides, in pertinent part:

> "(1) A person who uses force, including deadly physical force, as justified and permitted in this section is immune from criminal prosecution and civil action for the use of such force, unless the force was determined to be unlawful.
>
> "(2) Prior to the commencement of a trial in a case in which a defense is claimed under this section, the court having jurisdiction over the case, upon motion of the defendant, shall conduct a pretrial hearing to determine whether force, including deadly force, used by the defendant was justified or whether it was unlawful under this section. During any pretrial hearing to determine immunity, the defendant must show by a preponderance of the evidence that he or she is immune from criminal prosecution.
>
> "(3) If, after a pretrial hearing under subdivision (2), the court concludes that the defendant has proven by a preponderance of the evidence that force, including deadly force, was justified, the court shall enter an order finding the defendant immune from criminal prosecution and dismissing the criminal charges."

The present appeal involves a civil action initiated in the trial court by Arethea Hurbert against Stephon Green and the City of Birmingham ("the City"). During a stay of this civil action, Green obtained, in a separate, criminal action based on the same general factual

circumstances, a pretrial hearing and a resulting judgment finding him immune from criminal prosecution under § 13A-3-23(d) ("the criminal-court judgment"). The basic issue presented by this appeal is the effect of an intervening criminal-immunity order under § 13A-3-23(d) in a civil action based on the same general factual circumstances.

The language of § 13A-3-23(d) clearly provides for immunity both from criminal actions and from civil actions. One reading of § 13A-3-23(d) might suggest that a defendant's acquisition of a criminal-immunity order using the procedure provided by the statute also renders the defendant immune from civil liability as well.

However, as explained in the main opinion, even if they are based on the same general factual circumstances, a criminal action and a civil action are not the same thing. Thus, this Court cannot interpret the language of § 13A-3-23(d) to mean that a defendant's acquisition of a criminal-immunity order also bestows upon the defendant immunity from a civil action based on the same general factual circumstances. For the same reason, it seems that we could not interpret the language of § 13A-3-23(d) to mean that, after having received a pretrial hearing under that statute in a criminal action, such a pretrial hearing is then

unavailable in a civil action that is based on the same general factual circumstances. Indeed, if Green had instead failed in his endeavor to obtain the criminal-court judgment in this case, nothing in the language of § 13A-3-23(d) indicates that he would be deprived of an opportunity to also request such a hearing and a resulting immunity order in this civil action. As noted, the two actions are just not the same thing.

Thus, what effect did the intervening criminal-court judgment have on the civil action in this case? Based on my reading of § 13A-3-23(d), Green could have requested a pretrial hearing in the civil action, too. Instead, however, Green moved to dismiss Hurbert's claims based on the criminal-court judgment. The trial court denied that motion. Instead of a dismissal, the trial court determined that a pretrial evidentiary hearing should also be conducted in the civil action pursuant to § 13A-3-23(d). As noted above, the trial court's decision to conduct a pretrial hearing appears to be consistent with the language of § 13A-3-23(d). See Ex parte Teal, 392 So. 3d 992, 995 (Ala. 2023)(" '[T]he general purpose of immunity is not just to prevent one from having the burden to "stand trial," but also to prevent one from having the burden of "being subjected to suit" and of litigation in the first place.' Ex parte Watters, 220 So. 3d 1093, 1099 (Ala.

2016)(quoting <u>Ex parte Auburn Univ.</u>, 6 So. 3d 478, 484 (Ala. 2008)). Accordingly, 'a proceeding to test a defendant's entitlement to immunity should occur as soon as practicable, with due regard to the trial court's authority to manage its docket and both sides' ability to prepare for the proceeding.' 220 So. 3d at 1099."). However, a question remained regarding the evidentiary effect of the criminal-court judgment on the justification issue to be proved at the pretrial hearing in the civil action.

In its order scheduling the pretrial hearing, the trial court made clear that it was treating the criminal-court judgment as creating a rebuttable presumption that Green was immune from civil liability as well. See <u>Black's Law Dictionary</u> 1437 (12th ed. 2024)(defining "rebuttable presumption" as: "An inference drawn from certain facts that establish a prima facie case, which may be overcome by the introduction of contrary evidence."). The language of § 13A-3-23(d) itself does not dictate the evidentiary value of a criminal-immunity order for the purposes of a subsequent pretrial hearing conducted in a separate civil action under the statute; consequently, some construction of the statute may be necessary to resolve that question.

In this case, however, we need not reach such a resolution because, before the pretrial hearing, Hurbert filed a motion to convert the pretrial hearing under § 13A-3-23(d) into a summary-judgment hearing. The trial court granted Hurbert's motion, apparently without objection from Green or the City. Moreover, as Justice Shaw's writing observes, Hurbert has agreed in this case that the criminal-court judgment has evidentiary value for the purposes of the summary-judgment procedure that the parties decided to use in the trial court. Therefore, this Court's opinion in this case has analyzed the evidentiary consequence of the criminal-court judgment within the summary-judgment framework.

However, doing so is not an easy task because the pretrial-hearing procedure created by § 13A-3-23(d) is simply quite different from the summary-judgment procedure, with the most obvious difference being that the clear purpose of § 13A-3-23(d) is to obtain a pretrial factual determination regarding the issue of justification that would provide immunity from suit altogether. By contrast, the summary-judgment procedure is used to evaluate whether a genuine issue of material fact exists for the purposes of conducting a trial. See Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004).

Thus, I write specially to emphasize my view that nothing in this Court's opinion should be construed as approving of the parties' decision to litigate this case using the summary-judgment procedure. The legislature has created a pretrial-hearing procedure for the immunity afforded by § 13A-3-23(d) that is starkly different from the normal summary-judgment procedure used in civil actions. As this case illustrates, further attempts to meld the two procedures will no doubt continue to present novel challenges for the judiciary.

I acknowledge that, on appeal, Hurbert argues that certain constitutional problems may be implicated by applying the pretrial-hearing procedure provided by § 13A-3-23(d) to civil actions. However, on Hurbert's own motion, the pretrial-hearing procedure set forth in § 13A-3-23(d) was not utilized in this case. Therefore, we have no reason to consider Hurbert's constitutional arguments, and the Court has reached no holding regarding those issues. Thus, the fact remains that the legislature's chosen pretrial-hearing procedure set forth in § 13A-3-23(d) still stands.

Briefly, I also emphasize my view that nothing in the main opinion should be construed as foreclosing Green and the City from moving for a

summary judgment on remand. By reversing the trial court's summary judgments in this case, this Court has essentially concluded that the trial court has improperly evaluated the evidentiary value of the criminal-court judgment. As noted in the main opinion, for the purposes of the summary-judgment procedure adopted by the parties and with regard to the criminal-court judgment, the trial court concluded that the "'defense doesn't need to say anything further on that defense.'" ____ So. 3d at ____. Because this Court's decision has effectively adjusted the evidentiary value to be accorded the criminal-court judgment, Green and the City should be afforded an opportunity to move for a summary judgment with this corrected understanding and an opportunity to support their motions with whatever evidence they deem necessary in that pursuit.

SELLERS, Justice (dissenting).

I respectfully dissent from the decision to reverse the summary judgments entered by the Jefferson Circuit Court ("the trial court"). The events surrounding Officer Stephon Green's alleged assault on Arethea Hurbert have been considered by four different tribunals. The criminal division of the Jefferson Circuit Court ("the criminal court") determined that Green had acted in self-defense and was entitled to "stand-your-ground" immunity from prosecution for his alleged assault on Hurbert and therefore dismissed a criminal charge that had been levied against Green. In addition, a three-judge panel determined that Green should not have been discharged from his employment as a police officer based on the alleged assault because the discharge decision was not supported by substantial and legal evidence, and that panel's decision was upheld by the Alabama Court of Civil Appeals. Ex parte City of Birmingham (No. CL-2024-0748, Apr. 25, 2025) ___ So. 3d ___ (Ala. Civ. App. 2025) (table). Finally, in this civil case, the trial court entered summary judgments in favor of Green and the City of Birmingham.

In the criminal proceedings against Green, the criminal court determined that Green had met the requirements of § 13A-3-23, Ala.

Code 1975, which provides immunity from criminal prosecution under Alabama's stand-your-ground policy. In the present civil case, the trial court concluded that the dismissal of the criminal charge against Green created a presumption, for purposes of civil liability, that Green had acted in self-defense and was entitled to stand his ground when he struck Hurbert, a presumption that Hurbert did not sufficiently rebut. Section 6-5-338(a), Ala. Code 1975, is also implicated in this case. That statute provides "immunity from tort liability arising out of [the] conduct [of a peace officer] in performance of any discretionary function within the line and scope of his or her law enforcement duties."

In essence, Green has had a total of five judges in criminal and civil proceedings, in addition to the Court of Civil Appeals, determine, or uphold a determination, that Green's actions were properly taken in the line and scope of his duties as a police officer and in self-defense. Yet, in spite of this, the Court reverses the trial court's summary judgments in the present case on the basis that it improperly departed from the summary-judgment standard. The opinions of each of the referenced tribunals stand for something, and while I do not believe principles of res judicata bind Hurbert in this case, I do believe that the decisions from

the other tribunals deserve consideration.  In my view, the trial court in this case properly allowed the judgment dismissing the criminal charge against Green to create a presumption that Green acted in self-defense and was entitled to stand his ground, and Hurbert did not sufficiently rebut that presumption.  I would affirm the summary judgments of the trial court.